FIRST DIVISION

February 17, 2004

No. 1-02-2524

THE CITY OF CHICAGO, a Municipal Corporation, 

Plaintiff-Appellant,

v.

LATRONICA ASPHALT and GRADING, INC., an Illinois Corporation,

Defendant-Appellee. 
 

)))))))))))

Appeal from the

Circuit Court of

Cook County

01 CH 14595

Hon. Gay-Lloyd Lott,

Judge Presiding.

JUSTICE McBRIDE delivered the opinion of the court:

Plaintiff-appellant, City of Chicago (City), filed a complaint against defendant-appellee, Latronica Asphalt & Grading, Inc. (Latronica), which sought damages in connection with the City's cleanup of illegal waste disposed of on a lot in the City of Chicago (the Site).  Latronica filed a motion to dismiss which sought to strike the complaint on the ground that the alleged dumping by Latronica occurred more than five years prior to the filing of the complaint and the claim was therefore barred by the statute of limitations.  The trial court subsequently denied the City's motion to reconider.  The trial court granted Latronica's  motion.  The City appeals from those rulings.

We state the following background facts.  On September 4, 2001, the City filed a four-count complaint against Latronica which alleged unpermitted disposal of waste (count I), statutory public nuisance (count II), common law public nuisance (count III), and recovery of costs (count IV).  Specifically, the complaint alleged that the City obtained ownership of the Site as of December 30, 1999, and that prior to that time, the Site was owned by a trust and was operated by several individuals including John Christopher, a federal government informant in "Operation Silver Shovel," a public corruption investigation conducted by the United States Attorney.  During the period of Christopher's ownership and control, the Site was operated by  Marlboro, Inc., a company owned by Christopher.  At no time was a permit ever issued by the City making the Site a permitted dump site.  

According to "load tickets" and "invoices" produced by Marlboro, the complaint alleged, Latronica disposed of construction debris and other waste on the Site "(including asphalt, concrete, dirt, and mixed materials) from Latronica job sites during the period of at least August 4, 1992, through at least September 2, 1993."  Over this period, the City alleged that Latronica disposed of at least 2,498 cubic yards of construction debris and other waste at the Site.  It further claimed that Latronica's disposal of waste on the Site contributed to a massive buildup of illegal waste there.

The complaint alleged that the City had begun cleanup at the Site which would require the removal of approximately 663,500 cubic yards of waste at the estimated total cost of nearly $24 million.  The City claimed that the illegal waste disposed of at the Site constituted a common law and statutory public nuisance, and a threat to the "public health, safety, welfare, and the environment."  In count I, the complaint specifically alleged that "mounds of waste [from the Site] caused dust, dirt, and other materials to become airborne and to spread to the nearby community."  The City claimed that the illegal dumping by Latronica violated section 11-4-1500 of the Chicago Municipal Code.  Chicago Municipal Code § 11-4-1500 (amended January 12, 1995).  It further claimed that it was entitled to recover the cleanup costs under the cost recovery provision of the same code.  In sum, the City sought total damages in the amount of $106,889 which represented Latronica's portion of the City's cleanup expenditures.

On January 18, 2002, Latronica filed an amended motion to dismiss under sections 2-615 and 2-619 of the Illinois Code of Civil Procedure.  735 ILCS 5/2-615, 2-619 (West 2000)
.  Latronica's basis for the section 2-619 motion was that the alleged dumping occurred between August 4, 1992, through November 2, 1993, dates that were more than five years prior to the filing of the City's complaint on September 4, 2001, and the City's lawsuit was therefore barred by the statute of limitations.

On March 28, 2002, the trial court granted Latronica's amended motion to dismiss based on the five-year limitations period set forth in section 13-205 of the Illinois Code of Civil Procedure.  735 ILCS 5/13-205 (West 2000).  The court found that section 13-205 "[did] not exclude" the City and that the claims were time barred because the dumping ceased in 1993 and the complaint was not filed until 2001.  Although, as noted above, Latronica also filed a motion to dismiss under section 2-615 of the Illinois Code of Civil Procedure, the trial court did not address any of the arguments raised in that motion
.  735 ILCS 5/2-615 (West 2000).

A motion to dismiss pursuant to section 2-619 is a method of disposing of issues of law and easily proved issues of fact at the outset of the case.  
Fox Associates, Inc. v. Robert Half International, Inc.
, 334 Ill. App. 3d 90, 93, 777 N.E.2d 603 (2002).  Well-pled facts in the complaint are admitted; however, legal conclusions and facts unsupported by specific allegations are not.  
Fox Associates
, 334 Ill. App. 3d at 93.  We review a trial court's granting of a section 2-619 motion to dismiss 
de novo
.  
Fox Associates
, 334 Ill. App. 3d at 93.

The five-year statute of limitations in section 13-205 of the Illinois Code of Civil Procedure provides the following, in relevant part:

"Five year limitation. *** [A]ctions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereto, and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued."  735 ILCS 5/13-205 (West 2000).

Section 7-28-440(a) of the Chicago Municipal Code states, in relevant part:

"No person shall dump or deposit or cause to be dumped or deposited on any lot or parcel of real estate within the city any garbage, ashes, refuse, trash, miscellaneous waste, manure or other substance that may contain disease germs or may be scattered by the wind, or may decompose, or become filthy, noxious or unhealthful, except at a sanitary landfill site, liquid waste handling facility or transfer station for which a permit has been properly issued pursuant to the provisions of chapter 11-4 of this code.  Such dumping without a permit is hereby declared to be a nuisance. Any person violating this provision of this chapter will be fined not less than $1,500.00 and not more than $2,500.00 *** In addition to other penalties provided in this section, any person who violates this section shall be liable to the city for three times the amount of all costs and expenses incurred by the city in abating a nuisance." Chicago Municipal Code §7-28-440(a)(amended July 29, 2003).

Section 8-28-020 of the Chicago Municipal Code states, in relevant part:

"Any person who causes the city or its agents to incur costs in order to provide necessary services as the result of such person's violation of any federal, state or local law, or such person's failure to correct conditions which violate any federal, state or local law when such person was under a legal duty to do so, shall be liable to the city for those costs.  This liability shall be collectible in the same manner as any other personal liability."  Chicago Municipal Code §8-28-020 (amended May 17, 2000).
  

Section 11-4-1500 of the Chicago Municipal Code states, in relevant part:

"No solid or liquid waste shall be treated or disposed of within the city of Chicago except in accordance with this chapter. *** 

* * *

(e) A transfer station may accept waste for sorting and/or consolidation and for further transfer to a waste disposal, treatment, or handling facility.

No persons shall (1) cause or allow the open dumping of any waste, (2) abandon or dispose of any waste upon public property, except in a sanitary landfill approved by the Illinois Environmental Protection Agency and the Commissioner, (3) dispose, treat, abandon or transport any waste, except at a site or facility which meets the requirements of the Illinois Environmental Protection Act and which is permitted pursuant to this chapter.

Disposal or treatment of any waste without a permit is hereby declared to be a nuisance."  Chicago Municipal Code §11-4-1500 (amended January 12, 1995).

Section 11-4-1600 of the Chicago Municipal Code states, in relevant part
:

"Any person found in violation of the provisions of Section 14-4-1400 through 11-4-1590 inclusive shall be subject to a fine of $500.00 for the first offense, $1,000.00 fine for the second and each subsequent offense.  Each day such violation shall continue shall constitute separate and distinct offense."  Chicago Municipal Code §11-4-1600 (1995).
  

Under the common law, "the statute of limitations may not be asserted against the State or its county or municipal subdivisions as plaintiffs in actions involving 'public rights' [Citation]."  
City of Shelbyville v. Shelbyville Restorium, Inc.
, 96 Ill. 2d 457, 459, 451 N.E.2d 874 (1983).  This doctrine of governmental immunity from statutes of limitation is supported "by the policy judgment that the public should not suffer as a result of the negligence of its officers and agents in failing to promptly assert causes of action which belong to the public."  
Board of Education of City of Chicago v. A, C, & S, Inc.
, 131 Ill. 2d 428, 472, 546 N.E.2d 580 (1989).  The doctrine emerges from the latin maxim "
nullum tempus occurit regi
" (hereinafter 
nullum tempus
), which translates to "time does not run against the King."  
Shelbyville
, 96 Ill. 2d at 460.  

Whether the immunity doctrine applies depends on:

"[W]hether the right the governmental unit seeks to assert 'is in fact a right belonging to the general public, or whether it belongs only to the government or to some small and distinct subsection of the public at large.'  [Citation.]  Courts should consider who would benefit by the government's action and who would lose by its inaction. [Citation.] Three factors must be addressed when determining whether a governmental entity is asserting a public or private right: (1) the effect of the interest on the public; (2) the obligation of the governmental entity to act on behalf of the public; and (3) the extent to which public funds must be expended. [Citations.]" 
People ex rel. Department of Labor v. Tri State Tours, Inc.
, 342 Ill. App. 3d 842, 845, 795 N.E.2d 990, 993 (2003).

However, when the entity is acting in a private capacity, its claim may be subject to a limitations defense.  
Tri State Tours
, 342 Ill. App. 3d at 844-45, 795 N.E.2d at 993.  Further, "it is well established that where a statute of limitations does 'expressly include the State, county, municipality, or other governmental agencies,' common law governmental limitations immunity will not bar a limitations defense predicated on that statute. [Citations.]"  
County of Du Page v. Graham, Anderson, Probst & White, Inc.
, 109 Ill. 2d 143, 152-53, 485 N.E.2d 1076 (1985).

In the instant case, section 13-205 does not expressly include the state, county, municipality, or any other governmental agency within its purview.  As a result, if the City is asserting a "public right" in the instant action, the trial court's dismissal order based on the limitations defense was improper.  If, however, the City was acting in a private capacity, the statute of limitations may be asserted against it.  Therefore, we must decide whether the City's action asserts a "public right" or a private one. 

The City claims that there are two reasons its action asserts public rights: (1) the complaint is a public nuisance action which, by definition, is predicated upon a public right; (2) even if the claim were not properly pled as a nuisance action, the case satisfies the three factors noted above for asserting a public right.  In response,
 Latronica argues that the doctrine of 
nullum tempus
 does not apply because the allegations at issue involve municipal ordinance violations and a tort claim which do not involve a public right.  Without citation to any authority, Latronica also suggests that the issue before this court does not involve the assertion of a public right because "[t]here [was] no attempt by the [C]ity to plead specific facts to allege damage to public property."  However, this assertion, without more, does not resolve the issue and, in any event, the City was not required to plead specific facts to allege damage to public property.  A common law public nuisance is actionable even if the claim is premised on a nuisance present on private property.  See 
Donaldson v. Central Illinois Public Service Co.
, 199 Ill. 2d 63, 100-02, 767 N.E.2d 314 (2002)(privately owned site of coal tar gas plant); 
City of Chicago v. Cecola
, 75 Ill. 2d 423, 427, 389 N.E.2d 526 (1979)(privately owned establishment for prostitution).

In 
Young v. Bryco Arms
, 327 Ill. App. 3d 948, 959, 765 N.E.2d 1 (2001),
 appeal allowed
, 201 Ill. 2d 619, 786 N.E.2d 202 (2002), 
this court stated:

"A sufficient pleading for a public nuisance cause of action consists of facts alleging a right common to the general public, a transgression of those rights by the defendant and resulting damages. [Citations.] Pleading requirements are not strenuous because common law public nuisance eludes precise definition and depends on the peculiar facts of each case."  
Young
, 327 Ill. App. 3d at 959. 

See also 
Gilmore v. Stanmar, Inc.
, 261 Ill. App. 3d 651, 661, 633 N.E.2d 985 (1994)
.

In 
People ex rel. Burris v. C.J.R. Processing, Inc.
, 269 Ill. App. 3d 1013, 1019, 647 N.E.2d 1035 (1995), the court, citing 
Village of Wilsonville v. SCA Services, Inc
., 86 Ill. 2d 1, 21-22, 426 N.E.2d 824 (1981),
 defined a common law public nuisance as "an act or failure to act which injures the safety, health or morals of the public; or which causes substantial public annoyance; inconvenience or injury."  It further observed:

"The Criminal Jurisprudence Act defines public nuisances in pertinent part:

'It is a public nuisance:

1.  To cause or allow *** any offal, filth, or noisome substance to be collected, deposited or to remain in any place, to the prejudice of others.

* * *

8.  To *** use any building or other place for the exercise of any trade, employment or manufacture, which, by occasioning noxious exhalations, offensive smells or otherwise, is offensive or dangerous to the health of individuals, or of the public.' 740 ILCS 55/221(1), (8)(West 1992)."  
Burris
, 269 Ill. App. 3d at 1019.

In the instant case, the complaint, paragraph 7, alleged that Latronica disposed of "construction debris and other waste on the Site (including asphalt, concrete, dirt, and mixed materials) from Latronica job sites during the period of at least August 4, 1992, through at least November 2, 1993."  Paragraph 7 further alleged that during the time period, "Latronica disposed of at least 2,498 cubic yards of construction debris and other waste at the Site."  In paragraph 10, the complaint stated that, "[d]ue to the illegal waste that has been disposed of and allowed to remain on the Site, the site constitutes a public nuisance and a threat to the public health, safety and welfare and the environment."  

In count I of the complaint, for unpermitted disposal of waste in violation of section 11-4-1500 of the Municipal Code, paragraph 13 alleged: 

"Latronica disposed of substantial amounts of waste on the site, including asphalt, concrete, dirt, and demolition debris.  Latronica's disposal of waste on the site contributed to the creation of mounds of waste spread over the 20-acre site.  The mounds of waste caused dust, dirt, and other materials to become airborne and to spread to the nearby community." 

In count II of the complaint, for statutory public nuisance in violation of sections 11-4-1500 and 7-28-440 of the Municipal Code, paragraph 23 alleged:

"This count is brought seeking damages *** necessary to abate the nuisance at the Site, which Latronica contributed to creating and maintaining by disposing of construction debris and other waste at the Site, as well as fines for violations of the Municipal Code."

In count III of the complaint, for common law public nuisance, 
paragraph 30 alleged that:

"Latronica's illegal disposal of waste on the Site has resulted in the creation of an unreasonable and substantial annoyance, inconvenience, and danger to the citizens of Chicago in a variety of ways, including but not limited to the following:

Waste disposed of on the Site becoming airborne and scattered onto the public way and nearby properties;

Waste disposed of on the Site may harbor rats or other vermin;

Waste disposed of on the site could migrate onto adjacent properties through runoff from the site." 

Finally, the complaint claimed that the conduct of Latronica caused the City to expend money damages for the task of removing the waste illegally disposed of at the Site.  We find not only are these allegations sufficient to state common law and statutory public nuisance causes of action,
 b
ut we also conclude the complaint alleges sufficient facts predicated upon a public right. Specifically, the allegations consist of facts asserting the effect the interest has on the public, the obligation of the governmental entity to act on behalf of the public, and the extent to which public funds have been expended.  
Tri State Tours
, 342 Ill. App. 3d at 845.

There is no question that the City's cleanup of the Site affects the interests of the general public.  As noted by the City, "by cleaning up the Site, the City is eliminating a blight to the surrounding community, as well as potential health risks to those who live, work, or travel in the city each day."  In 
A,C,& S
, the supreme court held that the abatement of asbestos in public school buildings amounted to a public right because of the health concern involved.  
A, C, & S
, 131 Ill. 2d at 475-76.  Similarly, in this  case, the illegal dumping of waste could create a danger to the public health.  The presence of debris and airborne toxins could prove hazardous to the community.  Therefore, the City's cleanup of the Site affects the interests of the public.

Second, the City is authorized and obligated by law to clean up the Site.  Section 7-28-020 of the Chicago Municipal Code requires that whenever "any nuisance shall be found on any premises within the city, the commissioner of buildings or commissioner of the environment is hereby authorized *** to cause the same to be summarily abated."  Chicago Municipal Code §7-28-020 (amended December 11, 1991).
  This section expressly grants the City authority to summarily abate any nuisance.  

Several provisions in section 2-30-030
 of the Chicago Municipal Code obligate the City to act on the public's behalf to abate nuisances.  Section 2-30-030(1) states that the commissioner of the environment shall have the duty to "supervise the execution of and implement all laws, ordinances, rules and regulations pertaining to environmental protection and control."  Chicago Municipal Code §2-30-030(1) (amended May 14, 1997).  The commissioner is further obliged to "institute necessary proceedings to prosecute violations of Chapter 11-4 and to compel the prevention and abatement of *** pollution, *** and nuisances arising therefrom."  Chicago Municipal Code §2-30-030(4) (amended May 14, 1997).  
Specifically, the commissioner, under section 2-30-030(19), is required to
 "initiate proceedings to bring about the summary abatement of pollution sources which pose an imminent and serious threat to public health and welfare of the people or which constitute a public nuisance."  Chicago Municipal Code §2-30-030(19) (amended May 14, 1997).  These sections impose a duty upon the City to bring about the abatement of pollution sources which pose an imminent danger to the public or which constitute a public nuisance
.  Because of Latronica's inaction, the City was obliged to act on behalf of the public and to clean up waste disposed of at the Site.  
Tri State Tours
, 342 Ill. App. 3d at 845.

Finally, there is no doubt that the City expended significant public revenues on cleanup costs at the Site.  Paragraph 9 of the complaint stated that the estimated total cost of the clean up was $24,000,000.  The complaint further alleged that more than $106,899 was attributable to the waste dumped by Latronica.  For the reasons above, we conclude the complaint alleges sufficient facts predicated upon a public right.

Latronica contends that only a private right has been asserted  because the complaint involved the rights of the people of Chicago and not all people of the state.  In support of its argument, Latronica relies upon language in 
Chicago Park District v. Kenroy, Inc.
, 58 Ill. App. 3d 879, 889, 374 N.E.2d 670 (1978), 
rev'd in part
, 78 Ill. 2d 555, 42 N.E.2d 181 (1980), which states: "As used in the present context, 'public rights' are those rights belonging to all of the people of the State alike; 'private rights' are those rights limited to some local subdivision or municipality, such as a city or village. [Citations.]".  

While we acknowledge this language, we follow the more recent supreme court language in 
A, C, & S
, which states, "the governmental body need not be asserting an interest affecting everyone in the State in order for it to qualify as a public right."  
A, C, & S
, 131 Ill. 2d at 474.  This position is supported by this court's recent reasoning in 
Young
, cited above.  In 
Young
, the court, relying upon section 821B of the Restatement (Second) of Torts, stated, "it is not necessary that the entire community be affected by a public nuisance, so long as the nuisance will interfere with those who come in contact with it in the exercise of a public right or it otherwise affects the interests of the community at large."  
Young
, 327 Ill. App. 3d at 958-59, citing Restatement (Second) of Torts §821B, Comment G (1979).

In count I, paragraph 13, the complaint alleged that "mounds of waste caused dust, dirt, and other materials to become airborne and to spread to the nearby community."   In count III, paragraph  30 A, the complaint alleged that, among other things, Latronica's illegal disposal of waste at the Site resulted in danger to the citizens of Chicago, because "[w]aste disposed of on the Site [became] airborne and scattered onto the public way and nearby properties."  We find that these allegations satisfy the requirements set forth in 
Young
 and section 821B of the Restatement (Second) of Torts because they allege that the nuisance will interfere with those who come in contact with it in the exercise of a public right.       

Latronica also claims that because the City admitted in its brief that it intended to convey the property to a developer, "the right that the City is asserting is a private right and is subject to the applicable statute of limitations."  In support of this position, Latronica relies upon 
People v. Hale
, 320 Ill. App. 645, 651 (1943), quoting 
Brown v. Trustees of Schools
, 224 Ill. 184, 186, 79 N.E. 59 (1906), which held: " '[I]f the state becomes a partner with individuals, or engages in business, it divests itself of its sovereign character and is subject to the statute [of limitations].' "  In the instant case, the "admission" by the City specifically stated that "the City obtained ownership of the Site in order to clean [it] up *** prior to conveying it to a developer at no cost."  Beyond this statement in the City's brief, there are no allegations in the complaint nor is there evidence in the record that the City became a partner with individuals or engaged in any business other than conveying the Site to a developer at no charge.  As a result, we reject Latronica's argument that the statute of limitations at issue applies to the City on this ground.

Latronica also claims that 
nullum tempus
 does not apply under these facts because the Site has been 85% to 90% cleaned-up, thus the City's contention that imminent danger of waste on the Site becoming airborne is no longer a threat.  In our view, whether the Site was cleanedup is irrelevant to the question of whether the City is afforded immunity from the statute of limitations.  Latronica offers no authority in support of this argument and we therefore reject it.  The failure to comply with Supreme Court Rule 341(e)(7)(Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(7), eff. Oct. 1, 2001) and provide the reviewing court with relevant authority "waives an issue on appeal."  
Roe v. Jewish Children's Bureau of Chicago
, 339 Ill. App. 3d 119, 125, 790 N.E.2d 882 (2003).

Latronica also asserts that the City's complaint does not assert a public right because the alleged dumping occurred on private property during the period of 1992 and 1993.  But as the City points out, the City can bring a common law public nuisance action based on improper waste disposal on private property.  See  
Village of Wilsonville
, 86 Ill. 2d at 6. 

Further, we are not persuaded by any of the authority relied upon by Latronica in support of its argument that 
nullum tempus
 does not apply.  Latronica cites 
Namur v. Habitat Co.
, 294 Ill. App. 3d 1007 (1998), and 
City of Chicago v. Enright
, 27 Ill. App. 559 (1888), for the proposition that statutes of limitations can "be asserted against a municipality where it attempts to seek the enforcement of a penalty or an ordinance violation."  We note that 
Namur
 is easily distinguishable because the plaintiff in that case was not a government plaintiff and 
nullum tempus
 applies only to  government plaintiffs.  
Shelbyville
, 96 Ill. 2d at 459.  As a result, 
Namur
 is inapposite.

As the City points out, 
Enright
 involved an action against the defendants to enforce a $200 penalty imposed by an ordinance that required the defendants, who were engaged in the business of selling liquor, to obtain a license before doing so.  While the case did involve the question of whether a statute of limitations found in the criminal code applied, 
Enright
 did not involve an action for public nuisance or the 
nullum tempus
 doctrine.  
Enright
 is not instructive here.

Latronica also relies upon the following language in 
People ex rel. City of Chicago v. Commercial Union Fire Insurance Co.
, 332 Ill. 326, 331, 153 N.E. 488 (1926): "it is recognized that when acting in a private capacity a municipality may be subject to the lapse of time."  Based on this language, Latronica concludes that the City  in the instant case is improperly attempting to assert a local ordinance that does not create a public right.  In 
Commercial Union
, however, the court also recognized the general rule that "[t]ime does not run against the People in respect to the exercise of their governmental rights and powers."  
Commercial Union
, 322 Ill. at 331.  The court further concluded that the right to have certain insurance premiums reported in that case "
[was] a public right
." (Emphasis added.)  
Commercial Union
, 322 Ill. at 333.
  The decision in 
Commercial Union
 does not help Latronica either.

Latronica additionally relies upon 
Ramsay v. County of Clinton
, 92 Ill. 225 (1879).  In 
Ramsay
, the court, with little reasoning, concluded that the statute of limitations applied against the county in an action filed by it to recover certain monies that were fraudulently obtained by the county clerk.  We agree with the City that the more recent language set forth in 
A, C, & S
 now applies.  That is, "the governmental body need not be asserting an interest affecting everyone in the State in order for it to qualify as a public right."  
A, C, & S
, 131 Ill. 2d at 474.

Finally, Latronica relies upon 
Graham
, cited above.  
Graham
, however, is easily distinguishable from this case because the statute of limitations in 
Graham
 expressly included governmental entities within its purview.  
Graham
, 109 Ill. 2d at 152.  As a result, the court found that the express language of the statute of limitations in 
Graham
 abrogated governmental immunity.  
Graham
, 109 Ill. 2d at 153.
  
Graham
 is therefore distinguishable.  For the reasons above, we find that the right asserted here was a public right and that the doctrine of 
nullum tempus
 applies.

Latronica makes the additional argument that the City violated the Illinois public policy against splitting claims by failing to pursue its claims in one proceeding against all parties who allegedly engaged in illegal dumping at the Site.  This argument is not persuasive.  As made clear by the supreme court in 
Rein v. David A. Noyes & Co.
, 172 Ill. 2d 325, 340, 665 N.E.2d 1199 (1996), "[t]he rule against claim splitting *** prohibits a plaintiff form suing for part of a claim in one action and then suing for the remainder in another action."  Here, it is clear that the City has brought all of its claims against Latronica in one lawsuit.  Therefore, we reject this argument.

Alternatively, Latronica argues that the doctrine of 
laches
 bars the City's claim.  Our supreme court has held that, "[g]enerally, principles of 
laches
 are applied when a party's failure to timely assert a right has caused prejudice to the adverse party.  [Citation.]  The two fundamental elements of 
laches
 are lack of due diligence by the party asserting the claim and prejudice to the opposing party."  
Van Milligan v. Board of Fire  & Police Commissioners of the Village of Glenview
, 158 Ill. 2d 85, 89, 630 N.E.2d 830 (1994).  Latronica argues that these two elements have been satisfied in the instant case.

Nevertheless, "[i]ssues and arguments which were not presented to or considered by the trial court cannot be raised for the first time on review.  [Citation.]"  
Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.
, 116 Ill. App. 3d 1043, 1052, 452 N.E.2d 804 (1983); 
People v. Wells
, 182 Ill. 2d 471, 490, 696 N.E.2d 303 (1998).  Because Latronica's 
laches
 argument was not presented to the trial court, it has been waived and we will not address it here
.  

Finally, we will not address the merits of Latronica's section 2-615 motion because it was never addressed or even ruled on by the trial court in reaching its decision.  See 
Williams v. Board of Education of the City of Chicago
, 222 Ill. App. 3d 559, 565, 584 N.E.2d 257 (1991)(the appellate court did not consider the merits of the defendant's section 2-615 motion to dismiss where the trial court based its dismissal of plaintiff's complaint solely on the statute of limitations defense raised in the defendant's section 2-619 motion).
  See also 
Canel & Hale, Ltd. v. Tobin
, 304 Ill. App. 3d 906, 922, 710 N.E.2d 861 (1999) (the appellate court declined to rule on the merits of defendant's section 2-619 motion to dismiss because the trial court's dismissal ruling was limited to the defendant's section 2-615 motion).

For the reasons above, the trial court's order granting Latronica's section 2-619 motion to dismiss on statute of limitations grounds
 is reversed.

Reversed and remanded for further proceedings.

GORDON and McNULTY, JJ., concur.