THE CITY OF CHICAGO, Plaintiff-Appellant, v. AMERICAN CYANAMID COMPANY *et al.*, Defendants-Appellees.

First District (5th Division)    No. 1—03—3276

Opinion filed January 14, 2005.

Mara S. Georges, Corporation Counsel (Lawrence Rosenthal, Benna Ruth Solomon, and Suzanne M. Loose, Assistant Corporation Counsel, of counsel), Environmental Law Program Chicago Legal Clinic (Keith Harley, of counsel), and Lawyers Committee for Civil Rights Under Law, Inc. (Sarah Vanderwicken and Amy L. Zimmerman, of counsel), all of Chicago, for appellant.

Wildman, Harrold, Allen & Dixon, L.L.P., of Chicago (James P. Dorr, Sarah L. Olson, and Lisa S. Simmons, of counsel), for appellee E.I. du Pont de Nemours and Company.

Kinoy, Taren & Geraghty, P.C., of Chicago (Jeffery L. Taren, of counsel), for *amici curiae* Alliance for Healthy Homes, American Public Health Association, Day Care Action Council of Illinois, Health and Disability Advocates, Infant Welfare Society of Chicago, Illinois Chapter of the American Academy of Pediatrics, Illinois Public Health Association, Lawyers' Committee for Better Housing, Metropolitan Tenants Organization, Uptown People's Law Center and Voices for Illinois Children.

Vedder, Price, Kaufman & Kammholz, P.C., of Chicago (Andrew M. Gardner and James A. Spizzo, of counsel), for *amicus curiae* Illinois Manufacturers' Association.

Product Liability Advisory Council, Inc. (Hugh F. Young, Jr., of counsel), Dechert, L.L.P. (James M. Beck, of counsel), and Segal, McCambridge, Singer & Mahoney, Ltd. (Paul E. Wojcicki, of counsel), all of Chicago, for *amicus curiae* Product Liability Advisory Council.

JUSTICE GALLAGHER delivered the opinion of the court:

This is a public nuisance case. Plaintiff, the City of Chicago, has

filed suit against American Cyanamid Company, Atlantic Richfield Company, BP Corporation North America, Inc., BP America, Inc., Conagra Foods, Inc., Conagra Grocery Products Company, E.I. du Pont de Nemours and Company, Millenium Chemicals, Inc., Millenium Inorganic Chemicals, Inc., NL Industries, Inc., and the Sherwin-Williams Company, which are entities that manufactured or sold lead pigments or lead-based paint at some time prior to 1978.[1] Plaintiff alleges that the continued presence of lead-based paint in the City of Chicago constitutes a public nuisance that defendants created by continuing to manufacture, market, and promote lead-based paint for use in areas accessible to children long after they knew or should have known that lead-based paint is hazardous to children. The trial court dismissed plaintiff's complaint pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2000)) for failing to state a claim. We affirm.

## I. BACKGROUND

On September 5, 2003, plaintiff filed a one-count complaint sounding in public nuisance against defendants, which was later amended. On October 7, 2003, the circuit court dismissed plaintiff's action pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2000)) for failing to state a claim. Plaintiff filed this timely appeal. Pursuant to Supreme Court Rule 345 (155 Ill. 2d R. 345), we allowed the Alliance for Healthy Homes, American Public Health Association, Day Care Action Council of Illinois, Health and Disability Advocates, Infant Welfare Society of Chicago, Illinois Chapter of the American Academy of Pediatrics, Illinois Public Health Association, Lawyers' Committee for Better Housing, Metropolitan Tenants Organization, Uptown People's Law Center and Voices for Illinois Children to file a brief *amici curiae* in support of the plaintiffs. We also allowed the Illinois Manufacturers' Association and the Product Liability Advisory Council to file briefs *amici curiae* on behalf of the defendants.

On November 16, 2004, oral arguments were heard by this court. Two days later, on November 18, 2004, our supreme court filed its opinions in *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351 (2004), and *Young v. Bryco Arms*, 213 Ill. 2d 433 (2004), which were public nuisance actions against gun manufacturers, distributors and dealers. In both cases, our supreme court affirmed the dismissals of the cases, pursuant to section 2—615 of the Code of Civil Procedure

---

[1]Plaintiff also named Chicago Paint and Coatings Association as a defendant, alleging that it promoted the use of lead-based paint in Chicago. That defendant was voluntarily dismissed without prejudice on July 30, 2003.

(735 ILCS 5.2—615 (West 2000)), for failing to state a cause of action. We allowed the parties to address the effect, if any, that *Beretta* had on their respective positions. Plaintiff has now conceded that under *Beretta* it is foreclosed from seeking economic damages here, in the absence of physical harm to city property or other direct injury. *Beretta*, 213 Ill. 2d at 418. Therefore, plaintiff no longer seeks monetary damages to compensate it for costs it incurred in past lead-abatement efforts. However, plaintiff contends that the holding in *Beretta* does not apply to the injunctive relief it seeks. Plaintiff requests an injunction to abate the alleged nuisance by having defendants establish and fund an abatement program to remove lead-based paint from areas accessible to children and to take any other step necessary to abate the alleged nuisance. Plaintiff also seeks punitive damages.

## II. ANALYSIS

■ Our review of the circuit court's order granting defendants' motion to dismiss is *de novo. Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 147-48 (2002). The Illinois Supreme Court recently reiterated the well-established principles that we must follow when reviewing the sufficiency of a complaint in a public nuisance action. *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d at 364. As the *Beretta* court explained:

> "A motion to dismiss under section 2—615 of the Code [citation] challenges the legal sufficiency of the complaint by alleging defects on its face. *** In reviewing the sufficiency of a complaint, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. [Citation.] In addition, we construe the allegations in the complaint in the light most favorable to the plaintiff. [Citation.] When the plaintiff's theory of liability is public nuisance, the pleading requirements are not exacting because the 'concept of common law public nuisance *** elude[s] precise definition.' [Citation.] The existence of a nuisance ' "depends on the peculiar facts presented by each case." ' [Citations.]" *Beretta*, 213 Ill. 2d at 364.

In *Beretta*, the court first reviewed the general legal principles regarding the common law of public nuisance. *Beretta*, 213 Ill. 2d at 364-65. The court acknowledged some of the difficulties encountered in cases involving alleged public nuisances, citing one learned treatise as noting:

> " 'There is perhaps no more impenetrable jungle in the entire law than that which surrounds the word "nuisance." It has meant all things to all people, and has been applied indiscriminately to everything from an alarming advertisement to a cockroach baked in a pie. There is general agreement that it is incapable of any

exact or comprehensive definition.' " *Beretta*, 213 Ill. 2d at 364-65, quoting W. Keeton, Prosser & Keeton on Torts § 86, at 616 (5th ed. 1984).[2]

The *Beretta* court stated, however, that the definitions of both private nuisance and public nuisance contained in the Restatement of Torts are consistent with Illinois law. *Beretta*, 213 Ill. 2d at 365. According to section 821B of the Restatement (Second) of Torts, a public nuisance is "an unreasonable interference with a right common to the general public." Restatement (Second) of Torts § 821B(1) (1979); see also *Lewis v. Lead Industries Ass'n, Inc.*, 342 Ill. App. 3d 95, 793 N.E.2d 869 (2003).

---

[2]Our own research has uncovered recent sources discussing the confusion surrounding the law of nuisance. As one commentator has observed: "The vagueness of the articulated definitions of public nuisance is only one aspect of the judicial confusion evident in recent case law regarding the parameters of the tort. Many courts are confused by one or more critical aspects of what is required for a finding of liability." D. Gifford, *Public Nuisance as a Mass Products Liability Tort*, 71 U. Cin. L. Rev. 741, 778 (2003). The same commentator also expressed the sentiment that section 821B of the Restatement (Second) of Torts (1979) "does not untangle the jungle of 900 years of confusion surrounding recovery for damages under public nuisance law." D. Gifford, *Public Nuisance as a Mass Products Liability Tort*, 71 U. Cin. L. Rev. 741, 809 (2003). Another commentator has stated as follows: "The common law of nuisance has a reputation as a messy and dated doctrine. Said Justice Blackmun: 'one searches in vain … for anything resembling a principle in the common law of nuisance.' [Citation.] Nor is Justice Blackmun alone in his complaint. Nuisance doctrine is notoriously contingent and unsummarizable. Generations of legal writers expressed their frustration with nuisance doctrine in the most unhappy terms. As early as 1875, when the first American treatise on nuisance was published, its writer Horace Wood already described the doctrine as a ' "wilderness" of law.' [Citation.] Warren Seavey, the reporter for the nuisance section of the *Restatement (First) of Torts*, [citation] called it a 'mystery.' [Citation.] William Prosser, the reporter for the *Restatement (Second)*, adopted Wood's locational metaphor in calling nuisance law an 'impenetrable jungle.' [Citation.] He said it was a 'legal garbage can' [citation] full of 'vagueness, uncertainty and confusion' [citation] and told the American Law Institute he considered nuisance a 'confused and difficult topic.' [Citation.] The English legal scholar, F.H. Newark, called it a 'mongrel' doctrine, 'intractable to definition' and 'the least satisfactory department' of the law of torts. [Citation.] More recently, two environmental commentators described nuisance, with echoes of Wood and Prosser, as a 'quagmire,' [citation] while Richard Epstein, though saying it is 'much-maligned,' concedes nuisance 'does not work on a moral or deductive principle.' [Citation.]" L. Halper, *Untangling the Nuisance Knot*, 26 B.C. Envtl. Aff. L. Rev. 89, 90 (1998).

■ The *Beretta* court then turned to the legal adequacy of the complaint before it and discussed pleading requirements in a public nuisance action. *Beretta*, 213 Ill. 2d at 367. In order to adequately state a cause of action for public nuisance, a complaint must allege facts that show the following four elements: (1) the existence of a public right; (2) a substantial and unreasonable interference with that right by the defendant; (3) proximate cause, and (4) injury. *Beretta*, 213 Ill. 2d at 369.

As to the first element, plaintiff contends that it has sufficiently alleged a right common to the public because its complaint alleges that the presence of lead-based paint in more than a million Chicago homes unreasonably threatens public safety because lead deteriorates over time. Plaintiff further contends that, given the overwhelming prevalence of lead-based paint in Chicago's housing stock, it is exceptionally difficult to find affordable housing without running an unreasonable risk of exposing children to the hazards of lead-based paint and that this amounts to an unreasonable threat to public health, safety, and welfare. Defendants argue that plaintiff has failed to allege facts supporting the existence of a cognizable public right.

Our supreme court has generally defined a public nuisance as " ' "the doing of or the failure to do something that injuriously affects the safety, health or morals of the public, or works some substantial annoyance, inconvenience or injury to the *public*." ' [Citations.]" (Emphasis added.) *Beretta*, 213 Ill. 2d at 370. "Thus, the first element that must be alleged to state a claim for public nuisance is the existence of a right common to the general public." *Beretta*, 213 Ill. 2d at 370.

As the Restatement states:

> "*Interference with public right.* Conduct does not become a public nuisance merely because it interferes with the use and enjoyment of land by a large number of persons. There must be some interference with a public right. A public right is one common to all members of the general public. It is collective in nature and not like the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured. Thus the pollution of a stream that merely deprives fifty or a hundred lower riparian owners of the use of the water for purposes connected with their land does not for that reason alone become a public nuisance. If, however, the pollution prevents the use of a public bathing beach or kills the fish in a navigable stream and so deprives all members of the community of the right to fish, it becomes a public nuisance."
> Restatement (Second) of Torts § 821B, Comment *g*, at 92 (1979).

Defendants assert that plaintiff's complaint has failed adequately

to allege a public right because the alleged nuisance does not affect an indivisible resource shared by the public at large, like air, water, or public rights-of-way. Plaintiff does not allege that the presence of paint containing lead pigment harms individuals in the exercise of their public rights. Rather, plaintiff alleges that the nuisance, if one exists, occurs in unidentified buildings owned by private property owners. Defendants argue that plaintiff's allegations implicate an assortment of claimed private individual rights that do not belong to the public at large because the alleged conditions exist within private homes, which the general public has no right to enter, and therefore do not interfere with any "public right." Compare *Gilmore v. Stanmar, Inc.*, 261 Ill. App. 3d 651, 662 (1994) (pedestrian canopy that abutted street was public nuisance where it was "clear that the plaintiffs and all members of the public have a right to use the public streets").

■ On the other hand, a private nuisance that interferes with a public right can also constitute a public nuisance. *Chicago National League Ball Club, Inc. v. Thompson*, 108 Ill. 2d 357, 483 N.E.2d 1245 (1985). A public nuisance is actionable even where the nuisance is present on private property. *City of Chicago v. Latronica Asphalt & Grading, Inc.*, 346 Ill. App. 3d 264, 270, 805 N.E.2d 281, 287 (2004), citing *Donaldson v. Central Illinois Public Service Co.*, 199 Ill. 2d 63, 100-02, 767 N.E.2d 314 (2002) (privately owned site of coal tar gas plant), and *City of Chicago v. Cecola*, 75 Ill. 2d 423, 389 N.E.2d 526 (1979) (privately owned establishment for prostitution). Moreover, a "governmental body need not be asserting an interest affecting everyone in the State in order for it to qualify as a public right." *Board of Education of City of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428, 474, 546 N.E.2d 580, 601 (1989). Nevertheless, there must be sufficient interest in the general public. *A, C & S, Inc.*, 131 Ill. 2d at 474, 546 N.E.2d at 601 (toxic asbestos fibers present throughout public school buildings used for mandatory classroom attendance as well as other public functions).

Although the legislature has declared that the presence of *intact* lead-based paint does not alone constitute a lead hazard,[3] plaintiff alleges that the presence of intact lead-based paint constitutes a public nuisance because it will *inevitably* deteriorate. Citing *Village of Wilsonville v. SCA Services, Inc.*, 86 Ill. 2d 1, 26 (1981), and *People ex rel. Difanis v. Futia*, 56 Ill. App. 3d 920, 926 (1978), defendants assert that nuisances cannot be "contingent." Defendants argue that plaintiff's

---

[3]Under the Lead Poisoning Prevention Act, the "existence of intact lead-based paint does not alone constitute a lead hazard." 410 ILCS 45/8(1)(E) (West 2000).

claim that intact lead-based paint is a nuisance today is insufficient because it depends upon the possibility that property owners will allow the intact lead-based paint to deteriorate in the future.

Because we believe that defendants' points are well taken, we question whether plaintiff has adequately alleged the existence of a *public* right. In posing the question of whether the case before it involved a public right, our supreme court in *Beretta* explained that it did not "intend to minimize the very real problem of violent crime and the difficult tasks facing law enforcement and other public officials." *Beretta*, 213 Ill. 2d at 374. The court additionally noted that it did not "intend to dismiss the concerns of citizens who live in areas where gun crimes are particularly frequent." *Beretta*, 213 Ill. 2d at 374. Similarly here, by considering whether plaintiff has adequately alleged the existence of a public right, we do not intend to minimize the problem of the hazards posed by lead-based paint in areas accessible to children.

But as one commentator has stated: "The concept of public right as that term has been understood in the law of public nuisance does not appear to be broad enough to encompass the right of a child who is lead-poisoned as a result of exposure to deteriorated lead-based paint in private residences or child-care facilities operated by private owners. Despite the tragic nature of the child's illness, the exposure to lead-based paint usually occurs within the most private and intimate of surroundings, his or her own home. Injuries occurring in this context do not resemble the rights traditionally understood as public rights for public nuisance purposes—obstruction of highways and waterways, or pollution of air or navigable streams." D. Gifford, *Public Nuisance as a Mass Products Liability Tort*, 71 U. Cin. L. Rev. 741, 818 (2003).

As plaintiff notes, however, a different panel of this court has stated that allegations substantially similar to those in the instant case "sufficiently alleged the violation of a public right." *Lewis v. Lead Industries Ass'n*, 342 Ill. App. 3d 95, 106 (2003). Nonetheless, assuming, *arguendo*, that plaintiff has adequately alleged the existence of a public right, we agree with the circuit court's conclusion that plaintiff's amended complaint failed to sufficiently allege proximate causation. Therefore, we shall refrain from deciding whether plaintiff has adequately alleged the element of a public right. See *Beretta*, 213 Ill. 2d at 375 (declining to conclusively decide whether plaintiffs had adequately alleged a public right since plaintiffs' claim failed to meet the other elements required to state a cause of action for public nuisance). Instead, we shall limit the remainder of our discussion to plaintiff's failure to adequately allege the element of proximate cause.

*Cf. Behr v. Club Med, Inc.*, 190 Ill. App. 3d 396, 546 N.E.2d 751 (1989) (in order to maintain a cause of action based on a specific theory of liability, a plaintiff must allege in the complaint *all* of the essential elements of that theory).

The term "proximate cause" encompasses two distinct requirements: cause in fact and legal cause. *Beretta*, 213 Ill. 2d at 395, citing *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 455 (1992). "Although proximate cause is generally a question of fact [citation], the lack of proximate cause may be determined by the court as a matter of law where the facts alleged do not sufficiently demonstrate both cause in fact and legal cause. [Citation.]" *Beretta*, 213 Ill. 2d at 395-96. "Under [the] heading of 'Proximate Cause,' " the *Beretta* court addressed the defendants' arguments that they could not be held liable in public nuisance because (1) "they [had] no control over the instrumentality at the time the alleged harm result[ed] from the criminal acts of third parties," and (2) "their conduct [was] too remote from the alleged injury for liability to attach." *Beretta*, 213 Ill. 2d at 370.

As the *Beretta* court explained:

> "The first requirement, cause in fact, is present 'when there is a reasonable certainty that a defendant's acts caused the injury or damage.' [Citation.] In deciding this question, we first ask whether the injury would have occurred absent the defendant's conduct. [Citation.] In addition, when *** there are multiple factors that may have combined to cause the injury, we ask whether defendant's conduct was a material element and a substantial factor in bringing about the injury. [Citation.]" *Beretta*, 213 Ill. 2d at 395.

As to cause in fact, the *Beretta* court additionally explained:

> "The relevant inquiry is whether the harm would have occurred absent the defendants' conduct or, in the alternative, whether defendants' conduct was a material element and a substantial factor in bringing about the harm. [Citation.] Where reasonable minds could differ, the question of whether the defendant's conduct was a substantial factor or a material element is for the jury to decide." *Beretta*, 213 Ill. 2d at 403-04.

Defendants contend that, in the instant case, plaintiff has failed to allege causation in fact because plaintiff has not identified any specific defendant as the source of any lead pigment or paint at any particular location. Plaintiff disputes the identification requirement in a public nuisance action. We agree with defendants.

Plaintiff seeks to hold all defendants generally liable under a collective liability theory or market share theory of liability. The market share liability theory provides an exception to the general rule that a plaintiff must show that the defendant proximately caused the

plaintiff's injury.[4] Plaintiff's market share theory of liability has been expressly rejected by the Illinois Supreme Court. *Smith v. Eli Lilly & Co.*, 137 Ill. 2d 222, 232, 560 N.E.2d 324 (1990); see also *Lewis v. Lead Industries Ass'n*, 342 Ill. App. 3d 95, 103, 793 N.E.2d 869 (2003); accord *City of Philadelphia v. Lead Industries Ass'n*, 994 F.2d 112, 127-29 (3d Cir. 1993) (applying Pennsylvania law); *Santiago v. Sherwin-Williams Co.*, 782 F. Supp. 186, 191-95 (D. Mass. 1992) (applying Massachusetts law).

In *Smith*, the court acknowledged the existence of the various exceptions to the causation requirement, which include "enterprise liability," "alternative liability," "concert of action," "civil conspiracy," and "market share liability." *Smith*, 137 Ill. 2d at 235, 560 N.E.2d at 27. The *Smith* court ultimately concluded that "market share liability is not a sound theory, [and] is too great a deviation from our existing tort principles." *Smith*, 137 Ill. 2d at 251, 560 N.E.2d at 35.

Quoting the Illinois Supreme Court case of *Smith v. Eli Lilly & Co.*, 137 Ill. 2d 222, 232, 560 N.E.2d 324 (1990), this court has explained as follows:

> " 'A fundamental principle of tort law is that the plaintiff has the burden of proving by a preponderance of the evidence that the defendant caused the complained-of harm or injury; mere conjecture or speculation is insufficient proof.' The *Smith* court rejected the notion that liability may be imposed based merely on a breach of duty, without causation being established. [Citation.] This causation-in-fact requirement entails a reasonable connection between the act or omission of the defendant and the damages that the plaintiff has suffered ***." *Lewis v. Lead Industries Ass'n*, 342 Ill. App. 3d 95, 102, 793 N.E.2d 869 (2003).

In contrast to the governmental plaintiff here, *Lewis* involved

---

[4]The California Supreme Court was the first court to adopt this theory in *Sindell v. Abbott Laboratories*, 26 Cal. 3d 588, 607 P.2d 924, 163 Cal. Rptr. 132 (1980). The *Sindell* case involved a plaintiff who developed cancer as a result of her mother's ingestion during pregnancy of the drug, diethylstilbestrol (DES). DES, which was given to pregnant patients to prevent miscarriage, was manufactured by several different companies. Through no fault of her own, the plaintiff was unable to identify the specific manufacturer of the DES ingested by her mother. The *Sindell* court decided that the plaintiff did not need to identify the specific manufacturer that made the DES ingested by her mother. After rejecting several other collective liability theories, the *Sindell* court adopted the so-called market share liability theory and held that the DES manufacturers were liable in proportion to their share of the market at the time plaintiff's mother ingested the drug, regardless of actual causation. *Sindell*, 26 Cal. 3d at 612, 607 P.2d at 937, 163 Cal. Rptr. at 145.

private plaintiffs, namely, the representatives of the children who are now subject to medical screening and monitoring for lead poisoning, who appealed from the dismissal of their six-count second amended class action complaint. The *Lewis* plaintiffs had attempted to state a cause of action for public nuisance in count VI of their complaint. Although the instant case involves a single count alleging public nuisance, the *Lewis* case included substantially similar allegations. As in *Smith*, the plaintiffs in *Lewis* did not identify the manufacturer of the lead pigment to which their children had been exposed. The *Lewis* court ultimately held that "the plaintiffs' failure to identify the defendants who supplied the lead pigment used in the paint to which their children were exposed constituted a failure to allege facts in support of the causation element of the claim." *Lewis*, 342 Ill. App. 3d at 107, 793 N.E.2d at 878.

The *Lewis* court noted that "plaintiffs seem to rely upon a theory of enterprise liability to satisfy the causation element." *Lewis*, 342 Ill. App. 3d at 103, 793 N.E.2d at 875. The *Lewis* court rejected plaintiff's attempt, noting that "[t]he unarticulated premise underlying this theory is the proposition that a member of an industry may be held jointly and severally liable with other industry members for expenses occasioned by the risks created by the manufacture, marketing, and sale of an industry product known to be dangerous without proof that the particular member's specific product caused the injury for which recovery is sought." *Lewis*, 342 Ill. App. 3d at 103, 793 N.E.2d at 875. As the court further explained: "Acceptance of such a theory, however, would make the manufacturers insurers of their industry, a concept soundly rejected in *Smith* [citation] and would result in an abandonment of the principle that, to be held liable, a causative link must be established between a specific defendant's tortious acts and the plaintiff's injuries." *Lewis*, 342 Ill. App. 3d at 103, 793 N.E.2d at 875. Relying on the *Lewis* case, the circuit court here concluded that plaintiff's amended complaint failed to contain the requisite factual allegations of proximate causation.

Plaintiff now contends that *Lewis* and *Smith* are inapposite. Plaintiff asserts that because it is a governmental plaintiff it is not required to identify which defendant manufactured the paint found on each surface in Chicago where lead-based paint now constitutes a hazard. Plaintiff contends that the requisite causation is established where the defendant has substantially contributed to the public nuisance. Plaintiff notes that, in the present case, it is not seeking to recover for an injury to a particular person or property but, instead, it is asserting the right of the public as a whole to be free from threats to its health and safety. Moreover, plaintiff notes that it has alleged

that *every* defendant substantially participated in creating the threat. Defendants argue that plaintiff cannot escape the requirement of showing causation in fact by stylizing a products liability claim as a public nuisance action.

As defendants correctly note, there is no reported Illinois public nuisance case involving a viable lawsuit brought by any municipality in which identification and causation, including the specific location of the nuisance, were not known. In each case cited by plaintiff, the plaintiffs identified a specific defendant whose conduct allegedly caused the claimed nuisance. See, *e.g., People v. Brockman,* 192 Ill. App. 3d 680, 550 N.E.2d 222 (1989), *aff'd in part & rev'd in part on other grounds, People v. Brockman,* 143 Ill. 2d 351, 574 N.E.2d 626 (1991) (in which the State of Illinois commenced an action for public nuisance against landfill operators, seeking removal of toxic wastes at an identified site). Here, however, plaintiff has not identified any specific manufacturer's product at any specific location. Plaintiff is attempting to do what the *Smith* decision forbids: making each manufacturer the insurer for all harm attributable to the entire universe of all lead pigments produced over a century by many.

As the *Smith* court explained, recognizing a market share liability theory would be "too great a deviation from a tort principle which we have found to serve a vital function in the law, causation in fact, especially when market share liability is a flawed concept and its application will likely be only to a narrow class of defendants." *Smith,* 137 Ill. 2d at 268, 560 N.E.2d at 43. We believe that our supreme court's reasoning applies with equal force to the instant case involving a governmental plaintiff. We conclude that plaintiff has failed to allege sufficient facts to show that defendants were the cause in fact of the alleged nuisance.

Assuming, *arguendo,* that the Illinois Supreme Court would not preclude the market share liability theory in a public nuisance action, and further, that plaintiff could show cause in fact, we believe that, under *Beretta,* the second requirement of proximate cause—legal cause—is lacking.

As the court explained:

"[L]egal cause[ ] is established only if the defendant's conduct is ' "so closely tied to the plaintiff's injury that he should be held legally responsible for it." ' [Citations.] The question is one of policy—How far should a defendant's legal responsibility extend for conduct that did, in fact, cause the harm? [Citation.] See W. Keeton, Prosser & Keeton on Torts § 41, at 264 (5th ed. 1984) ('As a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability. Some

boundary must be set to liability for the consequences of any act, upon the basis of some social idea of justice or policy'). The proper inquiry regarding legal cause involves an assessment of foreseeability, in which we ask whether the injury is of a type that a reasonable person would see as a likely result of his conduct. [Citation.]" *Beretta*, 213 Ill. 2d at 395.

With respect to the issue of control, we note that defendants have argued that they cannot be liable for a public nuisance because they do not control the property on which the alleged nuisance is located. Plaintiff counters that control is irrelevant where a party substantially contributed to the *creation*, as opposed to the mere *maintenance*, of a nuisance. The *Beretta* court explained that the issue of control was related to proximate cause and the "remoteness argument" put forth by the defendants there that "their conduct was so far removed from the eventual criminal acts that, as a matter of policy, it would not be appropriate to hold them legally responsible." *Beretta*, 213 Ill. 2d at 404. However, citing *People v. Brockman*, the *Beretta* court also explained that: "When the nuisance results from a condition or conduct upon land, control over the land is generally a necessary prerequisite to the imposition of liability." *Beretta*, 213 Ill. 2d at 403, citing *People v. Brockman*, 143 Ill. 2d at 373.

Defendants now contend that the *Brockman* case undermines plaintiff's contention that their lack of control over the land is irrelevant. As noted earlier, in *Brockman*, the State of Illinois sued landfill operators under a public nuisance theory, and also under the Illinois Environmental Protection Act (Ill. Rev. Stat. 1979, ch. 111½, par. 1001 *et seq.*) (the Act) seeking removal of toxic wastes at an identified site. The issue was whether the trial court properly dismissed the landfill operators' third-party claims against generators and transporters of the wastes. The Illinois Supreme Court allowed the third-party claims for the alleged violations of the Act, but stated that in other contexts the control requirement still applies:

> "Third-party defendants next assert that there is no precedent in Illinois to expand liability for abatement of public nuisances to parties with no control over the site. They invite this court's attention to the oft-stated rule that liability for the pollution requires that the defendant be in control of the pollution either through ownership or control of the property. [Citations.]
>
> *The control argument is compelling, and we take no exception to the general rule as it is applied in original actions like those cases which we cite here.* However, the differing policy interests attendant to our contribution statute require that we not regard 'control' as the dominant consideration in cases such as the one before us."

(Emphasis added.) *Brockman*, 143 Ill. 2d at 373, 574 N.E.2d at 635.

Defendants argue that plaintiff's reliance on "substantial participation" as a substitute for control misreads the Restatement provisions upon which it relies. Under section 834 of the Restatement, "[o]ne is subject to liability for a nuisance caused by an activity, not only when he carries on the activity but also when he participates to a substantial extent in carrying it on." Restatement (Second) of Torts § 834 (1979). Defendants here are not "carrying *** on" or participating in "carrying *** on" anything. No defendant has sold the product in question for over 30 years.

Moreover, in discussing legal cause as it relates to public nuisance, the *Beretta* court criticized the appellate court below, whose decision it reversed, for its reliance on section 824 of the Restatement (Second) of Torts and comment *b* thereto. *Beretta*, 213 Ill. 2d at 405. The *Beretta* court decided that neither section 824 nor comment *b* addresses legal cause. *Beretta*, 213 Ill. 2d at 405. In the instant case, in arguing that defendants are liable for the alleged nuisance that they purportedly created based on their substantial participation, plaintiff has relied heavily on the reasoning of the now-reversed appellate court opinion in *Beretta*, as well as comment *b* to section 824 of the Restatement.

Comment *b* provides that in the "ordinary case," liability for nuisance "arises because one person's acts set in motion a force or chain of events resulting in the invasion." Restatement (Second) of Torts § 824, Comment *b* (1979). But as the *Beretta* court stated:

"[S]ection 824 and comment *b* do not provide the answer to the question of whether the alleged conduct of defendants constitutes a legal cause of the claimed nuisance. Rather, comment *b* merely poses the question—Is the conduct of these defendants a legal cause of the alleged interference with a public right? The answer to this question must be found elsewhere." *Beretta*, 213 Ill. 2d at 405.

In looking elsewhere, the *Beretta* court pronounced that "[i]n cases involving claims of negligence *or* nuisance, Illinois courts draw a distinction between condition and cause. [Citation.]" (Emphasis added.) *Beretta*, 213 Ill. 2d at 405.

The *Beretta* court explained as follows:

"Having assumed, *arguendo*, that the presence and use of illegal firearms can constitute a public nuisance, we must determine whether defendants' conduct in selling firearms that eventually are taken into the city of Chicago is a legal cause of the nuisance. Legal cause will be found if reasonable persons in the retail business of selling firearms would have seen the creation of the nuisance in the city of Chicago as a likely result of their conduct. [Citation.] However, legal cause will not be found where the criminal acts of third parties have broken the causal connection and the resulting nuisance 'is such as in the exercise of reasonable diligence would

not be anticipated and the third person is not under the control of the one guilty of the original wrong.' [Citation.] Clearly, the individuals who illegally possess and use firearms in the city of Chicago are not under the control of the dealer defendants. The question then becomes entirely one of foreseeability—Is the creation of a public nuisance in the city of Chicago so clearly foreseeable that the sales practices of these dealers should be deemed a legal cause of the nuisance even though it results from the criminal acts of third parties?" *Beretta*, 213 Ill. 2d at 407-08.

The *Beretta* court ultimately concluded, based on public policy grounds, that legal cause could not be established with respect to the dealer defendants. *Beretta*, 213 Ill. 2d at 410. As the court further explained:

"[T]he alleged public nuisance is not so foreseeable to the dealer defendants that their conduct can be deemed a legal cause of a nuisance that is the result of the aggregate of the criminal acts of many individuals over whom they have no control. This is one of those ' "instances in which a party may have contributed in some remote way [to the harm] and yet it is inappropriate to subject that party to tort liability." ' [Citations.]" *Beretta*, 213 Ill. 2d at 414.

The Illinois Supreme Court also decided *Young v. Bryco Arms*, 213 Ill. 2d 433 (2004), which was the private plaintiff version of *Beretta*. Again, the court held that the business practices of gun manufacturers, distributors, and dealers did not constitute a public nuisance because they were not the proximate cause of injuries to individuals shot and killed by third parties. In so doing, the court stated as follows:

"Ultimately, our conclusion that the doctrine of public nuisance does not encompass the novel claim made by plaintiffs is a public policy determination. See W. Keeton, Prosser & Keeton on Torts § 41, at 264 (5th ed. 1984) (proximate cause is merely a boundary used to set liability for the consequences of *any* act and is based upon 'some social idea of justice or policy'). We note that despite the existence of numerous statutes declaring various practices and conditions to constitute public nuisances, we have no indication from the legislature that it would be inclined to impose public nuisance liability for the manufacture and sale of a product that may be possessed legally by some persons, in some parts of the state. We are reluctant to interfere in the lawmaking process in the manner suggested by plaintiffs, especially when the product at issue is already so heavily regulated by both the state and federal governments. We, therefore, conclude that there are strong public policy reasons to defer to the legislature in the matter of regulating the manufacture, distribution, and sale of firearms." *Young*, 213 Ill. 2d at 455-56.

See also *Camden County Board of Chosen Freeholders v. Beretta U.S.A. Corp.*, 273 F.3d 536, 540 (3d Cir. 2001) ("Whatever the precise scope of public nuisance law in New Jersey may be, no New Jersey court has ever allowed a public nuisance claim to proceed against manufacturers for lawful products that are lawfully placed in the stream of commerce. On the contrary, the courts have enforced the boundary between the well-developed body of product liability law and public nuisance law. Otherwise, if public nuisance law were permitted to encompass product liability, nuisance law 'would become a monster that would devour in one gulp the entire law of tort,' [citation]. If defective products are not a public nuisance as a matter of law, then the non-defective, lawful products at issue in this case cannot be a nuisance without straining the law to absurdity").

In *County of Cook v. Phillip Morris, Inc.*, 353 Ill. App. 3d 55, 817 N.E.2d 1039 (2004), this court held that the remoteness doctrine, also referred to as the direct injury test, barred the county's action seeking damages against tobacco manufacturers for the cost of treating smokers. In so doing, we explained as follows:

> "Proof of a causal relationship between a defendant's action and a plaintiff's injury is essential in every tort '[b]ecause the consequences of an act go endlessly forward in time and its causes stretch back to the dawn of human history.' [Citation.] Thus, the concept of proximate cause was developed to limit the liability of a wrongdoer to only those harms with a reasonable connection to the wrongdoer's actions. [Citation.]" *County of Cook v. Phillip Morris, Inc.*, 353 Ill. App. 3d at 60, 817 N.E.2d at 1043.

Justice Andrews, in his famous dissent in *Palsgraf v. Long Island R.R.*, 248 N.Y. 339, 352, 162 N.E. 99, 103 (1928) (Andrews, J., dissenting), wrote:

> "What we do mean by the word 'proximate' is that, because of convenience, of public policy, of a rough sense of justice, the law arbitrarily declines to trace a series of events beyond a certain point. This is not logic. It is practical politics."

We agree with the sentiment expressed by some courts that "at some point along the causal chain, the passage of time and the span of distance mandate a cut-off point for liability." *Mazzagatti v. Everingham*, 512 Pa. 266, 273, 516 A.2d 672, 676 (1986).

We believe the same public policy concerns, applied to wrongdoers in tort cases, apply to cases involving a public nuisance. These public policy concerns dictate that legal cause cannot be established with respect to defendants in the present case that produced a legal product decades ago that was used by third parties who applied the product to surfaces in Chicago. Moreover, the legislature has enacted the Lead

Poisoning Prevention Act (410 ILCS 45/1 *et seq*. (West 2000)), which places the responsibility upon landowners to remediate the effects of deteriorated lead-based paint. We therefore hold that the conduct of defendants in promoting and lawfully selling lead-containing pigments decades ago, which was subsequently lawfully used by others, cannot be a legal cause of plaintiff's complained-of injury, where the hazard only exists because Chicago landowners continue to violate laws that require them to remove *deteriorated* paint.

■ In sum, defendants cannot be liable under a theory of public nuisance for the manufacture, sale and promotion—decades ago—of products containing lead pigment because plaintiff has failed to allege facts adequate to show the proximate cause element of the cause of action. Plaintiff has failed to adequately show that defendants' selling and promoting lead-based paint decades ago was a cause in fact or a legal cause of plaintiff's complained-of injuries.

## III. CONCLUSION

We conclude that plaintiff has failed to adequately allege that defendants proximately caused the plaintiff's injuries. In view of our holding that an essential element of the cause of action is absent, there is no need to consider plaintiff's other issues. Accordingly, we affirm the decision of the circuit court of Cook County dismissing plaintiff's amended complaint pursuant to section 2—615 of the Code of Civil Procedure. 735 ILCS 5/2—615 (West 2000).

Affirmed.

O'BRIEN and NEVILLE, JJ., concur.