MARY LEWIS *et al.*, on Behalf of Themselves and Others Similarly Situated, Plaintiffs-Appellants, v. LEAD INDUSTRIES ASSOCIATION, INC., *et al.*, Defendants-Appellees.

First District (3rd Division)  No. 1—02—1034

Opinion filed June 30, 2003.—Rehearing denied July 29, 2003.

Block & Landsman (Laurence M. Landsman and Alan F. Block, of counsel), and Edward T. Joyce & Associates, P.C. (Edward T. Joyce and Arthur W. Aufmann, of counsel), both of Chicago, for appellants.

Sidley, Austin, Brown & Wood, of Chicago (Michael W. Davis, David B. Johnson, and David B. Barlow, of counsel), for appellee American Cyanamid Company.

Winston & Strawn, of Chicago (Dan K. Webb and Bradley E. Lerman, of counsel), for appellee Atlantic Richfield Company.

JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiffs, Mary Lewis, Tashswan Banks and Jacqueline Nye, appeal from an order of the circuit court dismissing each of the six counts of their second amended class action complaint for failure to state causes of action. The plaintiffs brought the instant action on behalf of themselves and other similarly situated parents and guardians of minor children who have undergone or will undergo medical screening, assessment, or monitoring for lead poisoning or latent diseases associated with lead poisoning. The defendant, Lead Industries Association, Inc. (LEAD), is a corporation which, according to the plaintiffs, promoted the use of lead pigments in paint sold in the United States. The remaining defendants, American Cyanamid Company, Atlantic Richfield Company, Fuller-O'Brien Corporation, ConAgra Grocery Products Company, NL Industries, Inc., SCM Chemicals and the Sherwin-Williams Company (hereinafter collectively referred to as the Manufacturing Defendants), are alleged to have manufactured, marketed, and distributed white lead pigment for use in paint.

The plaintiffs' second amended class action complaint asserted six claims against the defendants. Each count alleged that, as a result of the health hazards associated with lead-based paints offered for sale prior to 1978, all minor children in Illinois "are now, have been in the

past, and will be indefinitely in the future, exposed to and at risk for lead poisoning," and, as a consequence, all children six months through six years of age must be either screened for lead poisoning or assessed for the risk of developing it. Common to each count was a prayer seeking an order compelling the defendants to reimburse and pay the plaintiffs and the members of the putative class for the costs of all medical screenings, assessments, and monitoring of their minor children.

The defendants filed motions pursuant to section 2—615 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615 (West 2000)), seeking the dismissal of all six counts of the plaintiffs' second amended complaint. In addition to asserting grounds addressed specifically to each of the counts, the defendants argued that all of the counts failed to allege either a present injury to the plaintiffs or facts in support of the proximate cause element of the claims pled. The circuit court granted the defendants' motions, and this appeal followed.

As the complaint at issue was dismissed in response to motions brought pursuant to section 2—615 of the Code, the only question before this court is whether the dismissed counts state causes of action upon which relief can be granted. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 488, 639 N.E.2d 1282 (1994). The issue is one of law, and our review is *de novo*. *Metrick v. Chatz*, 266 Ill. App. 3d 649, 651-52, 639 N.E.2d 198 (1994).

We begin our review with an analysis of counts I and II of the plaintiff's second amended complaint. Initially, we note that we, like the trial court, have had difficulty in identifying the specific causes of action that the plaintiffs attempted to plead in these counts. However, a motion to dismiss should not be granted if any good cause of action has been stated, even if that cause of action is not the one intended by the pleader. *Illinois Graphics Co*, 159 Ill. 2d at 488. Consequently, our first task is to endeavor to identify the causes of action that the charging allegations in counts I and II might support.

Count I alleged that LEAD and the Manufacturing Defendants knew of the hazards and toxicity of lead-based paint and, nevertheless, intentionally failed and refused to warn manufacturers, wholesalers, retailers, consumers, purchasers, appliers, and users of the following: (1) that lead-based paint should not be used in areas where persons might foreseeably be exposed to lead through ingestion, inhalation, or absorption; (2) that ingestion, inhalation, or absorption of lead from lead-based paint posed a serious and immediate risk to the health and well-being of residents in buildings with surfaces containing lead-based paint; and (3) the risks, hazards, and damage to persons or property that would be caused or increased by the use of lead-based

paint. The caption of the count, "Intentional Failure to Warn," is not descriptive of a recognized cause of action. Failure to warn of a product's dangerous propensities may, however, under appropriate circumstances, constitute a breach of duty upon which an action for negligence might be predicated (see *Beadles v. Servel, Inc.*, 344 Ill. App. 133, 100 N.E.2d 405 (1951)), and may also serve as the basis for holding a defendant liable under a strict product liability theory (*Woodill v. Parke Davis & Co.*, 79 Ill. 2d 26, 29, 402 N.E.2d 194 (1980)).

Count II, captioned "Supplier Liability," alleged that the "[d]efendants supplied lead pigment for use in manufacturing lead-based paints knowing that the lead pigments were not safe for such use and could not be made reasonably safe before the lead-based paint was used by consumers and applied to surfaces encountered by children." Again, however, the caption of the count does not disclose the tort theory upon which it is grounded and the allegations might be construed as asserting several different causes of action. The supplier of an unreasonably dangerous product may be liable for injuries proximately caused by the product in a negligence action (see *Watts v. Bacon & Van Buskirk Glass Co.*, 18 Ill. 2d 226, 231-32, 163 N.E.2d 425 (1959); Restatement (Second) of Torts § 389 (1965)), or in an action premised upon the theory of strict product liability (see *Gilliland v. Rothermel*, 83 Ill. App. 3d 116, 118, 403 N.E.2d 759 (1980)).

We note also that, in counts I and II, the plaintiffs alleged that the defendants' acts and omissions were both knowing and intentional. Although not a separate tort, the theory of willful and wanton misconduct might encompass the intentional wrongdoing that the plaintiffs alleged in these counts. See *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267, 274-75, 641 N.E.2d 402 (1994).

Since the charging allegations of counts I and II might be construed as supporting several theories of tort liability, we will address the grounds for dismissal raised by the defendants that are common to all of these theories.

In moving for dismissal, the defendants asserted that all six counts of the plaintiffs' second amended complaint failed to allege a compensable injury. They argued that the cost of screening a child for lead poisoning, absent any allegation that the child suffered a physical injury, is not a compensable present injury that will satisfy the damage element of a tort claim. The trial court agreed, characterizing the relief sought by the plaintiffs as damages for an increased risk of future harm.

The plaintiffs contend that the trial court "misconstrued" the relief sought in their second amended complaint. According to the plaintiffs, "[t]hey are not seeking damages for an increased risk of

future physical harm"; rather, they seek only compensation for the cost of medical testing made necessary by the defendants' manufacturing, marketing, and sale of a dangerous product. The plaintiffs argue that the cost of testing to detect an injury or disease is a compensable injury, even in the absence of any present physical injury.

■ The defendants are correct in their assertion that, in order for a plaintiff to recover damages for an increased risk of future harm in a tort action, he or she must establish, among other things, that the defendant's breach of duty caused a present injury which resulted in that increased risk. See *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 496-507, 771 N.E.2d 357 (2002) (citing with approval Connecticut Civil Jury Instruction No. 2—40(c)). An increased risk of future harm standing alone is insufficient to support an award of damages under the theories of strict product liability, negligence (*Board of Education v. A, C & S, Inc.*, 131 Ill. 2d 428, 442-43, 546 N.E.2d 580 (1989)), and willful and wanton misconduct. In this case, however, we are faced with the preliminary question of whether the cost of diagnostic testing to detect a possible injury, which testing was made necessary by a defendant's breach of duty, is in itself a present injury compensable in a tort action.

Relying primarily upon the holding in *Friends For All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816 (D.C. Cir. 1984), the plaintiffs contend that an action seeking recovery for the cost of such examinations is distinct from a claim seeking recovery for an increased risk of harm of developing an injury or disease in the future. In *Friends For All Children*, the court reasoned that "an individual has an interest in avoiding expensive diagnostic examinations just as he or she has an interest in avoiding physical injury." *Friends For All Children*, 746 F.2d at 826. We agree.

There is a fundamental difference between a claim seeking damages for an increased risk of future harm and one that seeks compensation for the cost of medical examinations. The injury which is alleged, and for which compensation is sought, in a claim seeking damages for an increased risk of harm is the anticipated harm itself. The injury that is alleged, and for which compensation is sought, in a claim seeking damages for a medical examination to detect a possible physical injury is the cost of the examination. Unlike a claim seeking damages for an increased risk of future harm, a claim seeking damages for the cost of a medical examination is not speculative and the necessity for such an examination is capable of proof within a "reasonable degree of medical certainty." If a defendant's breach of duty makes it necessary for a plaintiff to incur expenses to determine if he or she has been physically injured, we find no reason why the expense of such an

examination is any less a present injury compensable in a tort action than the medical expenses that might be incurred to treat an actual physical injury caused by such a breach of duty. See *Carey v. Kerr-McGee Chemical Corp.*, 999 F. Supp. 1109 (N.D. Ill. 1998).

Although we have determined that the trial court erred in concluding that the injury claimed by the plaintiffs was not compensable in a tort action, our analysis must continue to determine if counts I and II of the second amended complaint alleged facts in support of the causation element of the claims pled. The defendants assert, and the trial court agreed, that, in order to satisfy the causation elements of their claims, the plaintiffs were required to identify a specific manufacturer or supplier of the lead pigment used in the paint to which their children were exposed and that their failure to do so renders the counts substantially insufficient at law.

The plaintiffs argue that, because they are not seeking damages for personal injuries sustained as a result of their children's exposure to lead-based paint, they need not identify any specific defendant as the source of the lead pigment used in the paint to which their children were exposed. Rather, they contend that they need only allege a causal connection between the defendants' conduct and the need for children to be screened for lead poisoning. According to the plaintiffs, they satisfied their pleading burden in this regard by alleging that the risk of poisoning from exposure to lead pigments in paint such as that promoted and supplied by the defendants is so significant that it has become medically necessary that all children six months through six years of age residing in the State of Illinois be either screened for lead poisoning or assessed for the risk of developing it (see Lead Poisoning Prevention Act (410 ILCS 45/1 *et seq.* (West 2000))). We disagree.

■ An essential element of a plaintiff's cause of action for any tort is that there be a proximate causal relationship between the act or omission of the defendant and the damages that the plaintiff has suffered. W. Keeton, Prosser & Keeton on Torts § 41, at 263 (5th ed. 1984). In *Smith v. Eli Lilly & Co.*, 137 Ill. 2d 222, 232, 560 N.E.2d 324 (1990), our supreme court held that: "A fundamental principle of tort law is that the plaintiff has the burden of proving by a preponderance of the evidence that the defendant caused the complained-of harm or injury; mere conjecture or speculation is insufficient proof." The *Smith* court rejected the notion that liability may be imposed based merely on a breach of duty, without causation being established. *Smith*, 137 Ill. 2d at 232. This causation-in-fact requirement entails a reasonable connection between the act or omission of the defendant and the damages that the plaintiff has suffered and is applicable to claims premised upon allegations of negligence (*Smith*, 137 Ill. 2d at 232), strict product

liability (*Smith*, 137 Ill. 2d at 233; *Wehmeier v. UNR Industries, Inc.*, 213 Ill. App. 3d 6, 28, 572 N.E.2d 320 (1991)), and willful and wanton misconduct.

■ In this case, the plaintiffs have alleged that their children are at risk for lead poisoning and must undergo screening, yet they have not identified the manufacturer or supplier of the lead pigment used in the paint to which their children were exposed. Rather, the plaintiffs seem to rely upon a theory of enterprise liability to satisfy the causation element of the claims asserted in counts I and II of their second amended complaint. The unarticulated premise underlying this theory is the proposition that a member of an industry may be held jointly and severally liable with other industry members for expenses occasioned by the risks created by the manufacture, marketing, and sale of an industry product known to be dangerous without proof that the particular member's specific product caused the injury for which recovery is sought. Acceptance of such a theory, however, would make the manufacturers insurers of their industry, a concept soundly rejected in *Smith*, 137 Ill. 2d at 266-68, and would result in an abandonment of the principle that, to be held liable, a causative link must be established between a specific defendant's tortious acts and the plaintiff's injuries.

Each manufacturer owes a duty to those who will use its product or who might be injured by it. However, that duty is not so broad as to extend to anyone who uses or might be injured by a like kind product supplied by another. *Smith*, 137 Ill. 2d at 265. The causation-in-fact element of a cause of action requires a plaintiff to establish a causative link between the tortious acts of a specific defendant and the injuries for which recovery is sought. *Leng v. Celotex Corp.*, 196 Ill. App. 3d 647, 649, 652, 554 N.E.2d 468 (1990). By failing to identify the defendant that supplied the lead pigment used in the paint to which their children were exposed, the plaintiffs failed to satisfy the causation element of a claim seeking damages for the cost of screening their children for lead poisoning. This is true regardless of whether the plaintiffs' claims sound in negligence, strict product liability, or willful and wanton misconduct. The fact that the Illinois legislature has mandated that all children between six months and six years of age be either screened for lead poisoning or assessed for the risk of developing it does not alter our conclusion in this regard as the Lead Poisoning Prevention Act is not the source of a private right of action. *Abbasi v. Paraskevoulakos*, 187 Ill. 2d 386, 718 N.E.2d 181 (1999).

Based on the plaintiffs' failure to identify which of the defendants manufactured or supplied the lead pigment used in the paint to which their children were exposed, counts I and II of their second amended

complaint lack allegations supporting the causation element of the claims pled and, therefore, fail to state causes of action upon which relief might be granted. For this reason, we affirm the dismissal of counts I and II.

Count III, titled "Fraud On The Public," incorporated all of the allegations in counts I and II and additionally asserted that the defendants, "individually and in concert, fraudulently, intentionally, purposefully, willfully and wantonly, omitted to disclose material facts regarding the safety, suitability and qualities of their lead-containing pigments through their advertising and promotional activities *** [and] intentionally and/or recklessly failed to disclose material facts about the hazards of lead pigment contained in the lead-based paint." Although count III appears to be a claim for fraudulent concealment, some of the allegations set forth in counts I and II that were incorporated into count III might be construed as allegations of fraudulent misrepresentation. In either case, the count fails to state a cause of action as it is lacking allegations that would support the elements of duty, reliance, and causation necessary to plead a fraud action.

■ A complaint sounding in fraud must allege, *inter alia*, that the defendant falsely stated a material fact or concealed a material fact that the defendant had a duty to disclose; that the fact was intentionally misstated or concealed to induce the plaintiff to act; that the plaintiff detrimentally relied upon the misstatement or the nonexistence of the fact; and that the plaintiff suffered damages proximately resulting from such reliance. *In re Marriage of Travlos*, 218 Ill. App. 3d 1030, 1037, 578 N.E.2d 1267 (1991); see also *Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 128 Ill. 2d 179, 193, 538 N.E.2d 530 (1989); *Metzger v. New Century Oil & Gas Supply Corp. Income & Development Program—1982*, 230 Ill. App. 3d 679, 693, 594 N.E.2d 1218 (1992).

■ Whether based upon fraudulent misrepresentations or the fraudulent concealment of material facts, count III fails to allege the element of reliance necessary to support the claim. The plaintiffs do not allege that they exposed their children to lead-based paint in reliance upon any statement made by any of the defendants, nor do they allege that the defendants' failure to disclose any fact caused them to expose their children to lead-based paint. Even if the count could be read as satisfying the element of reliance, the plaintiffs' failure to identify the specific defendant who made a false statement upon which they relied or who concealed a material fact which induced them to act renders count III insufficient to state an action in fraud. Our conclusion in this regard is supported by the same reasoning underlying our

earlier conclusion that counts I and II were fatally deficient for failure to plead facts establishing the element of causation.

Additionally, if count III is construed as asserting a claim based upon the fraudulent concealment of a material fact, it is also insufficient at law for failure to allege any special relationship between the defendants and the plaintiffs. In order to prove fraud by intentional concealment of a material fact, the plaintiff must show the existence of a special or fiduciary relationship with the defendant that would give rise to a duty to speak. *Magna Bank of Madison County v. Jameson*, 237 Ill. App. 3d 614, 618, 604 N.E.2d 541 (1992). No such relationship is alleged in count III of the plaintiffs' second amended complaint. Absent a fiduciary or other legal relationship existing between the parties, the defendants had no duty to speak. *Magna Bank of Madison County*, 237 Ill. App. 3d at 618.

Our analysis of count III of the plaintiffs' second amended complaint leads us to conclude that it fails to plead a cause of action for fraud, and, therefore, the trial court properly dismissed the count.

Next, we address the sufficiency of count IV, the plaintiffs' claim for "Unjust Enrichment." Count IV alleged that, as a result of the defendants' conduct as described in counts I, II, and III, the plaintiffs, and all members of the class, bear the burden of paying for the assessment and screening of their minor children for lead poisoning. This is a financial burden that, the plaintiffs assert, should fall upon the defendants. The premise of the claim is that the defendants have a duty to pay for the assessment and screening of the plaintiffs' minor children and that the plaintiffs' payment of the costs attendant thereto conferred a benefit upon the defendants for which the plaintiffs should be compensated.

To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege facts supporting the conclusion that the defendant unjustly retained a benefit to the plaintiff's detriment and that the defendant's retention of the benefit violates the principles of justice, equity, and good conscience. *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160, 545 N.E.2d 672 (1989). However, as the defendants correctly argue, the term "unjust enrichment" is not descriptive of conduct that, standing alone, will justify an action for recovery. *Alliance Acceptance Co. v. Yale Insurance Agency, Inc.*, 271 Ill. App. 3d 483, 492, 648 N.E.2d 971 (1995), quoting *Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.*, 137 Ill. App. 3d 84, 90-91, 484 N.E.2d 349 (1985). In order for a cause of action for unjust enrichment to exist, there must be some independent basis that establishes a duty on the part of the defendant to act and the defendant must have failed to abide by that duty. See *Board of*

*Education of City of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428, 466, 546 N.E.2d 580 (1989) (hereinafter referred to as *A, C & S*).

In this case, the plaintiffs do not allege that the defendants were under any independent duty to pay for the screening of minor children for lead poisoning. Rather, as earlier noted, the plaintiffs merely assert that they paid for medical monitoring made necessary by the defendants' alleged tortious conduct. To accept the plaintiffs' theory of liability would create an action for unjust enrichment in every case where the commission of a tort results in the plaintiff being required to expend funds for which he or she is entitled to recovery. The supreme court rejected a similar theory in *A, C & S*, 131 Ill. 2d at 466, and we reject the theory in this case. Absent any allegation that the defendants were under an independent duty to provide medical monitoring for the plaintiffs' children, count IV failed to state a cause of action for unjust enrichment and was properly dismissed by the circuit court.

In count V of their second amended complaint, the plaintiffs attempted to set out a public nuisance claim. They incorporated all of the allegations contained in the prior four counts and concluded that the defendants' conduct "injured the safety and health of Illinois children [and] *** has caused substantial public annoyance, inconvenience and injury." Again, however, the plaintiffs failed to allege facts satisfying the causation element of their claim.

" ' "A common or public nuisance is the doing of or the failure to do something that injuriously affects the safety, health or morals of the public, or works some substantial annoyance, inconvenience or injury to the public." ' (Prosser, Torts sec. 88, at 583 n.29 (4th ed. 1971), quoting, *Commonwealth v. South Covington & Cincinnati Street Ry. Co.* (1918), 181 Ky. 459, 463, 205 S.W. 581, 583.)" *Village of Wilsonville v. SCA Services, Inc.*, 86 Ill. 2d 1, 21-22, 426 N.E.2d 824 (1981). Stated otherwise, a public nuisance is "an unreasonable interference with a right common to the general public." Restatement (Second) of Torts § 821B (1979), cited as authority in *Young v. Bryco Arms*, 327 Ill. App. 3d 948, 958, 765 N.E.2d 1 (2001), *appeal allowed*, 201 Ill. 2d 619, 786 N.E.2d 202 (2002).

The public health and safety are common rights an interference with which is sufficient to support a public nuisance claim. *Young*, 327 Ill. App. 3d at 959. In this case, the plaintiffs have sufficiently alleged the violation of a public right by asserting that the defendants promoted, manufactured, sold, and distributed lead pigment for use in paints to be used on residential interior surfaces and that such paint exposed all children in this state to the risk of lead poisoning.

To maintain a public nuisance action, however, a private

individual must also allege a special and particular injury distinct from that suffered by the public at large which is fairly traceable to the defendant's conduct. *Young*, 327 Ill. App. 3d at 971-72. In this case, the minor children of plaintiffs Lewis and Banks are alleged to suffer from elevated levels of lead in their blood as a result of being exposed to lead-based paint. This is an injury distinct from that suffered by minor children generally. Again, however, the plaintiffs have failed to identify which of the defendants supplied the lead pigment used in the paint to which these children were exposed. As a consequence, they have failed to satisfy the pleading requirements for a public nuisance action brought by private litigants. *Young*, 327 Ill. App. 3d at 972. Additionally, we believe that the plaintiffs' failure to identify the defendants who supplied the lead pigment used in the paint to which their children were exposed constituted a failure to allege facts in support of the causation element of the claim. Our conclusion in this regard is supported by the same reasoning that we articulated in reference to the deficiencies in counts I and II. As a result, we find no error in the dismissal of count V of the second amended complaint.

Finally, we address the sufficiency of count VI, the plaintiffs' civil conspiracy claim. After incorporating all of the allegations in the prior five counts, the plaintiffs alleged that the Manufacturing Defendants, acting in concert through LEAD, conspired to: market, produce, and promote lead pigment for use in paint without regard to the dangerous properties and toxic effects of such paint; suppress research, regulation, and public dissemination of information concerning the dangerous properties and toxic effects of lead-based paint; and conceal from and/or mislead the public about the medical and scientific data which indicated that lead-based paint was potentially hazardous to the health and safety of children. Additionally, the plaintiffs alleged that Eagle-Picher Industries, Inc. (Eagle-Picher), a now-defunct corporation, was also a coconspirator.

In dismissing count VI, the trial court held that a claim of civil conspiracy must be based upon an underlying tort and, in the absence of allegations supporting such a tort, the civil conspiracy claim fails. We agree with the trial court's statement of the law, but disagree with its conclusion that the plaintiffs failed to plead a good and sufficient cause of action for civil conspiracy.

Civil conspiracy is the combination of two or more persons or entities for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means. *McClure v. Owens Corning Fiberglass Corp.*, 188 Ill. 2d 102, 133, 720 N.E.2d 242 (1999). In *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 63, 645 N.E.2d 888 (1994), our supreme court held:

"A cause of action for civil conspiracy exists only if one of the parties to the agreement commits some act in furtherance of the agreement, which is itself a tort. [Citations.] Thus, the gist of a conspiracy claim is not the agreement itself, but the tortious acts performed in furtherance of the agreement. [Citations.] 'It is only where means are employed, or purposes are accomplished, which are themselves tortious, that the conspirators who have not acted but have promoted the act will be held liable.' W. Prosser, Torts § 46, at 243 (4th ed. 1971)."

■ Counts I, II, and V of the plaintiffs' second amended complaint were properly dismissed because, by failing to identify the defendant that supplied the lead pigment used in the paint to which their children were exposed, the plaintiffs failed to plead facts in support of the causation element of the claims asserted. In count VI, however, by identifying the defendants along with Eagle-Picher as the sole producers and promoters of lead pigment used in paint and further alleging that each was a party to the conspiratorial agreement, the plaintiffs have alleged both an agreement and tortious conduct in furtherance of the agreement. For the purposes of this claim, the fact that the plaintiffs may not be able to identify which of the defendants was the active tortfeasor that supplied the lead pigment used in the paint to which their children were exposed is not fatal.

"The civil conspiracy theory has the effect of extending liability for a tortious act beyond the active tortfeasor to individuals who have not acted but have only planned, assisted, or encouraged the act." *McClure*, 188 Ill. 2d at 133. If the plaintiffs can prove, as they allege, that the sale and distribution of lead pigment for use in paint was tortious in nature, that the defendants and Eagle-Picher were the sole suppliers and promoters of lead pigment, and that each was a party to the conspiratorial agreement, then it is of little consequence that the plaintiffs cannot establish which of the defendants actually supplied the lead pigment used in the paint to which any given child might have been exposed as each defendant would be liable regardless of which one was the active tortfeasor. We conclude, therefore, that the circuit court erred in dismissing count VI of the plaintiffs' second amended complaint.

In summary, we affirm the circuit court's dismissal of counts I, II, III, IV, and V of the plaintiffs' second amended complaint, reverse the dismissal of count VI, and remand this cause to the circuit court for further proceedings.

Affirmed in part and reversed in part; cause remanded.

SOUTH, P.J., concurs.

JUSTICE WOLFSON, specially concurring:

The majority concludes "[a]n increased risk of future harm standing alone is insufficient to support an award of damages under the theories of strict product liability, negligence [citation], and willful and wanton misconduct." 342 Ill. App. 3d at 101. *Dillon v. Evanston Hospital*, 199 Ill. 2d 483 (2002), holds that increased risk of future harm is a present injury. The supreme court was not asked to decide and did not decide whether any other injury was required before a jury could be instructed on increased risk of harm. Nor are we required to decide the issue in this case since plaintiffs specifically disclaim any interest in it. I would leave it for another day, when the issue would be fully briefed.