# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 03-3950 & 04-1193

LORI SCHROTT,

*Plaintiff-Appellant,*

v.

BRISTOL-MYERS SQUIBB CO., *et al.*,

*Defendants-Appellees.*

———————

Appeals from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 03 C 1522—**Suzanne B. Conlon**, *Judge.*

———————

ARGUED SEPTEMBER 23, 2004—DECIDED APRIL 13, 2005

———————

Before EASTERBROOK, WOOD, and EVANS, *Circuit Judges.*

WOOD, *Circuit Judge.* When Lori Schrott's bilateral breast augmentation surgery in 1987 failed to produce the positive results she expected, she was understandably upset. After receiving "Même" brand polyurethane foam-coated silicone implants, Schrott experienced near-constant pain. Her breasts began to harden, and she eventually lost all feeling in both of them. In early 1989, the implant in Schrott's right breast broke through the capsule that was supposed to keep it in the proper place. Although the implant did not actually rupture, the incident left her breast with a droop-

ing appearance. This prompted Schrott to have a new implant inserted in November 1989. Schrott's pain and dissatisfaction remained, however, and so she had both implants removed in 1993.

In 1988, before her second surgery in 1989, Schrott complained to her doctors that she was suffering from headaches, dizziness, nausea, and memory loss. Subsequent medical evaluations concluded that Schrott suffered from both migraine headaches and a somatoform disorder known as "Briquet's Syndrome." See STEDMAN'S MEDICAL DICTIONARY 1749 (27th ed. 2000) (defining "Briquet's Syndrome" as "a chronic but fluctuating mental disorder, usually of young women, characterized by frequent complaints of physical illness involving multiple organ systems simultaneously."). She may also have a condition that causes short lapses of consciousness called "vasovasal or neurocardiogenic syncope." See *id.* at 1745 (defining "vasovasal syncope" as "faintness or loss of consciousness due to reflex reduction in blood pressure."). While her doctors assured her that there was no link between these problems and the implants, Schrott did not believe them.

In 1993, Schrott sued the manufacturers of her implants in the Circuit Court of Cook County (Illinois), claiming that chemicals found in the polyurethane foam, toluene diisocyanate (TDI) and toluene diamine (TDA), were responsible for her neurological ailments. She also claimed that these chemicals were carcinogenic, and thus that she faces a significant risk of developing cancer at some point in the future as a result of the implants. Schrott sued for negligent failure to warn, strict tort liability and breach of an implied warranty. That case, however, is not the one before us. In 2002, after eight years of discovery and only a few months before trial was set to begin, Schrott attempted to add two more claims to her case: first, one for negligent infliction of emotional distress, and second, one for a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815

ILCS 505/12 *et seq.* When the state court denied this motion, Schrott voluntarily withdrew her case.

Her retreat from litigation proved to be only a temporary move. Soon after she abandoned the first state court action, she filed a new case in the Circuit Court that included her claims plus the two new ones the same court earlier had rejected, naming as defendants Bristol-Myers Squibb Company, Inc., The Cooper Companies, Inc., Medical Engineering Corporation, Aesthetech Corporation, and Natural Y Surgical Specialties, Inc., all of whom had some part in either manufacturing or designing the implants in question. The defendants removed this new action to the district court for the Northern District of Illinois, properly relying on the diversity jurisdiction. The district court then granted the defendants' motion for summary judgment, finding that Schrott's claims were not only untimely, but failed on the merits as well. We agree and thus affirm the district court's judgment.

On appeal, Schrott raises three arguments: first, that the district court erred in its conclusion that her case was untimely for several reasons (including the relation-back doctrine, the discovery rule, and a continuing violation theory); second, that the district court's ruling with respect to her expert witness should not have followed the framework set out in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), seemingly because this was a case based on state law and, in addition, her claim arose before *Daubert* was decided; and third, that the district court should not have imposed certain costs of the litigation on Schrott.

The second and third of these arguments require little discussion. It is frivolous to assert that a federal court should not have applied the federal rules governing expert witnesses, just because the case happened to be a diversity case and thus one governed by state substantive law. Federal courts do, and must, apply both the Federal Rules of

Evidence and other evidentiary rules derived from federal statutes, Supreme Court decisions, or other sources of federal law, in their proceedings. See, *e.g.*, *Park v. City of Chicago*, 297 F.3d 606, 611 (7th Cir. 2002) ("The Federal Rules of Evidence, not provisions of state law, govern the admissibility of evidence in federal court."); *Barron v. Ford Motor Co. of Canada Ltd.*, 965 F.2d 195, 198 (7th Cir. 1992) ("Even in diversity cases the rules of evidence applied in federal courts are the federal rules of evidence rather than state rules . . ."). Indeed, *Daubert* and later Supreme Court decisions such as *General Electric Co. v. Joiner*, 522 U.S. 136 (1997), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), were all diversity tort cases. The fact that state law affects relevancy determinations under Fed. R. Evid. 401 and 402, or privileges under Fed. R. Evid. 501, does not mean that federal courts apply state evidence rules in diversity cases under some modern version of the Conformity Act. See Act of Sept. 29, 1789, c. 21, § 2, 1 Stat. 93; see generally 4 Wright & Miller § 1002 (3d ed. 2002). The rules of evidence enacted under the authority of the Rules Enabling Act, 28 U.S.C. §§ 2072 *et seq.*, govern unless, like the civil procedure rules, the particular rule was not authorized under the Act. See *Hanna v. Plumer*, 380 U.S. 460, 471-73 (1965).

With respect to costs, Schrott argues that the $7,560 she paid in the state court action for defense counsel's depositions of three of her expert witnesses should have been credited against the $6,220.41 charge for the fees of the defense experts whom she deposed in the federal action. It suffices to say that we see no abuse of discretion in the court's decisions to treat the two actions as independent actions, to decide that the federal action was not a mere continuation of the state action, and to impose the federal costs on Schrott, consistently with Fed. R. Civ. P. 26(b)(4)(C) and 54(d)(1).

We see no more merit in her arguments relating to the timeliness of her claim. Yet there is an even more fundamental problem with her case: even if we were to agree that the claim is somehow still alive, the summary judgment record leaves no doubt that it fails on the merits. We look separately at the three central points she is making: first, her argument that the implants caused various forms of neurological damage; second, that she is entitled to recover because of her fear of developing cancer; and third, that the defendants violated the Consumer Fraud Act. We note that in this diversity case, the parties agree that the substantive law of Illinois applies.

In order for Schrott to succeed on her claim against the defendants for neurological damage, she must establish the fact that the implants caused her injuries. See, *e.g.*, *Lewis v. Lead Industries Ass'n, Inc.*, 793 N.E.2d 869, 873 (Ill. App. 2003) ("An essential element of a plaintiff's cause of action for any tort is that there be a proximate casual relationship between the act or omission of the defendant and the damages which the plaintiff has suffered."). Like virtually all district courts, the Northern District of Illinois has structured the summary judgment process through its local rules. See N.D. Ill. Rule 56.1. That rule requires "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law" to accompany summary judgment motions. N.D. Ill. Rule 56.1(a)(3). To avoid summary judgment, the non-moving party must file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. Rule 56.1(b)(3)(A). The defendants did just what they were supposed to do, filing their required "Statement of Undisputed Facts" in connection with their summary judgment motion. Schrott did not. Specifically, she did not challenge ¶¶ 43, 45, and 54, which

assert that there was no causative link between the implants or any components of the implants and her various neurological symptoms. The district court was entitled to take these facts as uncontested, as the local rule provides. See *Koszola v. Bd. of Educ. of City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004). By conceding that this essential element of her case could not be proven, Schrott left the court with no option but to grant the defendants' summary judgment motion.

Schrott fares no better on her theory based upon negligent infliction of emotional distress, which is based on her fear that she may develop cancer in the future. To succeed on this one, she must show that the defendants owed her a duty, that they breached this duty, and that this breach proximately caused her injury. See *Parks v. Kownacki*, 737 N.E.2d 287, 296-97 (Ill. 2000). Once again, her responses to the defendants' Local Rule 56.1 statement conclusively resolve the case against her. She admitted, among other things, that "[b]reast implants do not create a potential for a medically significant exposure to TDI, TDA or toluene," ¶ 60, that she had "no quantifiable risk of future illness, including Cancer," ¶ 61, and that there was "no evidence that [she] has had exposure to toluene from her implants, but she has been exposed to toluene from smoking cigarettes," ¶ 70. By effectively conceding that her fear is unfounded, she has also demonstrated that any fear she may feel is not reasonable. Her concession that the implant did not emit a medically significant level of TDI, TDA, or toluene amounts to an admission that it could not have created any risk of cancer associated with toluene. That is enough to sink this aspect of her claim.

Finally, there is Schrott's assertion that the defendants violated the Consumer Fraud Act. The Illinois Appellate Court held in *Adler v. William Blair & Co.*, 648 N.E.2d 226, 234 (Ill. App. 1995), that "as with any other tort, to sustain a cause of action under the Consumer Fraud Act, the

plaintiffs must further allege that damages were proximately caused by the fraud." The defendants pointed to evidence that the package inserts for the implants disclosed the medically relevant risks, that the medical community knew about these risks, and that Dr. Bloch (the physician who performed the procedures on Schrott) knew about the risks. Schrott failed to show either that any of the stated facts amounted to misrepresentations, or that there were material omissions of fact. Moreover, as before, she did not show what causal link existed between the disclosures (or omissions) and her damages. Thus, the district court correctly found that the defendants were entitled to summary judgment on this aspect of the case.

None of this is to say that Schrott has not suffered from the various medical problems she details, or that she was satisfied with the results of her 1987 and 1989 surgeries. It is only to say that she has no claim against these defendants. We therefore AFFIRM the judgment of the district court.

A true Copy:

      Teste:

                           _____

                           *Clerk of the United States Court of Appeals for the Seventh Circuit*