# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Lewis v. NL Industries, Inc.*, 2013 IL App (1st) 122080

---

| | |
|---|---|
| Appellate Court Caption | MARY LEWIS, TASHWAN BANKS, and KATHLEEN O'SULLIVAN, on behalf of themselves and all others similarly situated, Plaintiffs-Appellants, v. NL INDUSTRIES, INC.; AMERICAN CYNAMID COMPANY; ATLANTIC RICHFIELD COMPANY; FULLER-O'BRIEN CORPORATION; SCM CHEMICALS; CONAGRA GROCERY PRODUCTS COMPANY; and THE SHERWIN-WILLIAMS COMPANY, Defendants-Appellees. |
| District & No. | First District, First Division<br>Docket No. 1-12-2080 |
| Filed | March 29, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In response to a question certified under Supreme Court Rule 308, the appellate court answered that the Lead Poisoning Prevention Act mandating lead toxicity screening for certain children constitutes a legally sufficient proximate cause of the costs of such testing. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 00-CH-9800; the Hon. Peter Flynn, Judge, presiding. |
| Judgment | Certified question answered; cause remanded. |

Counsel on
Appeal

Nisen & Elliott, Block & Landsman, and Edward T. Joyce & Associates, P.C., all of Chicago, for appellants.

Robbins, Salomon & Patt, Ltd., Winston & Strawn, both of Chicago, McGrath North Mullin & Kratz, of Nebraska, and Arnold & Porter, LLP, of New York, for appellees.

Panel

PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion.

Justices Cunningham and Delort concurred in the judgment and opinion.

## OPINION

¶ 1 The plaintiffs, Mary Lewis, Tashwan Banks, and Kathleen O'Sullivan (on behalf of themselves and all plaintiffs similarly situated), filed this interlocutory appeal in connection with their class-action suit against the defendants, NL Industries, American Cynamid Company, Atlantic Richfield Company, Fuller-O'Brien Corporation, SCM Chemicals, Conagra Grocery Products Company, and the Sherwin Williams Company. On appeal, the plaintiff seeks an answer to a question the circuit court certified for our review pursuant to Illinois Supreme Court Rule 308 (eff. Feb. 26, 2010).

¶ 2 To give context to the certified question, we begin with a summary of the procedural history of this case. This case began when the plaintiffs filed suit to recover damages related to the defendants' alleged manufacture, distribution, and promotion of lead paint. That case was dismissed for failure to state a claim, and the plaintiffs appealed the dismissal to this court. On appeal, we accepted the plaintiffs' theory that the cost of lead testing or assessment could constitute a compensable damage. *Lewis v. Lead Industries Ass'n*, 342 Ill. App. 3d 95 (2003) (*Lewis I*). We held, however, that plaintiffs had not stated a cause of action sounding in tort, because they had not adequately pled the causation element required of a tort claim. *Lewis I*, 342 Ill. App. 3d 95. The plaintiffs argued that they had pled causation by alleging that "the risk of poisoning from exposure to lead pigments in paint such as that promoted and supplied by the defendants is so significant that it has become medically necessary that all children six months through six years of age residing in the State of Illinois be [tested or assessed] (see Lead Poisoning Prevention Act [(Act)] (410 ILCS 45/1 *et seq.* (West 2000)))." *Lewis I*, 342 Ill. App. 3d at 102. We disagreed, on the ground that the plaintiffs had failed to "identif[y] the manufacturer or supplier of the lead pigment used in the paint to which their children were exposed" and thus had failed to allege a causative link "between a specific defendant's tortious acts and the plaintiff[s'] injuries." *Lewis I*, 342 Ill. App. 3d at 103. In so holding, we rejected the plaintiffs' reliance on the Lead Poisoning Prevention Act: "The fact that the Illinois legislature has mandated that all children between six months and

-2-

six years of age be [tested or assessed] does not alter our conclusion in this regard as the [Act] is not the source of a private right of action." *Lewis I*, 342 Ill. App. 3d at 103. We nonetheless allowed the plaintiffs' suit to continue based on a claim of civil conspiracy, a tort that does not require the plaintiffs to identify which of a set of conspiring defendants actually committed a tort. *Lewis I*, 342 Ill. App. 3d at 107-08.

¶ 3 Following our remand, the circuit court granted summary judgment to the defendants on the plaintiffs' conspiracy claim, on the grounds that the plaintiffs had failed to prove that the alleged conspiracy included every producer of lead-based paint pigments and, relatedly, that some lead-based paints had been applied to residential structures prior to the date the plaintiffs alleged the conspiracy began. *Lewis v. American Cyanamid Company*, No. 1-05-0974 (1st Dist. 2006) (unpublished order under Supreme Court Rule 23) (*Lewis II*). On appeal, we held that genuine issues of material fact remained, and we reversed the circuit court's summary judgment order and remanded the cause. *Lewis II*, No. 1-05-0974.

¶ 4 Following this second remand, the plaintiffs sought, and obtained, certification of the class of plaintiffs who were legal guardians of children whom the Act required to undergo lead testing or assessment. However, after the defendants sought to depose individual plaintiffs to determine whether they would have undergone lead testing regardless of the Act's dictates, the circuit court decertified the class, on the basis that the issue of whether the Act led to testing or assessment costs would be individualized to each plaintiff. On motion from the plaintiffs, the circuit court then certified the following question for our review pursuant to Rule 308:

"Whether the [Act], which mandates lead toxicity screening for all children between the ages of six months and six years residing in zip codes designated 'high risk' by the Illinois Department of Public Health, constitutes a legally sufficient proximate cause of the costs of such lead toxicity screening."

The plaintiffs filed a timely application for leave to appeal this question, and we granted the application.

¶ 5 As noted, this appeal comes to us in the form of a certified question pursuant to Rule 308. The appellants' choice of appeal device carries important consequences for the scope of our analysis. In a typical appeal, such as, for example, an appeal from a circuit court order denying class certification (see Ill. S. Ct. R. 306(a)(8) (eff. Feb. 16, 2011)), we would consider all relevant facts of the case and apply the law to them, to order a particular outcome for the specific case at hand. In a Rule 308 appeal, we can do none of these things. In such appeals, "our jurisdiction is limited to considering the question certified[,] and we cannot address issues outside that area." *Hudkins v. Egan*, 364 Ill. App. 3d 587, 590 (2006); *Sassali v. DeFauw*, 297 Ill. App. 3d 50, 51 (1998). We acknowledge that this jurisdictional limitation is often honored in the breach, and that "[i]t is not uncommon for a reviewing court in class action to go beyond the certified question and address the propriety of the decision to certify a class action." *P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corp.*, 345 Ill. App. 3d 992, 999 (2004). The reasons for the jurisdictional limitation, however, are plain: "all review by this court is limited by supreme court rule to final orders and certain interlocutory orders specified in those rules," and so the supreme court rules dictate the limits of our jurisdiction.

*Getto v. City of Chicago*, 92 Ill. App. 3d 1045, 1048 (1981); see *Moore v. Chicago Park District*, 2012 IL 112788, ¶ 5 n.1 (noting that, in a certified question appeal, appellate court jurisdiction depends on a proper Rule 308 order). To analyze issues beyond the question certified to us would be to expand our own jurisdiction; this is a prerogative that belongs solely to our supreme court. See *People v. Jones*, 213 Ill. 2d 498, 507, 821 N.E.2d 1093 (2004) ("the appellate court does not possess the supervisory powers enjoyed by [the supreme court]"); *e.g.*, *Moore*, 2012 IL 112788, ¶ 5 n.1 (explaining that the supreme court's supervisory authority empowers it to expand its own jurisdiction). We therefore observe the limits of our jurisdiction by confining our analysis to the certified question presented to us.

¶ 6 That limitation renders irrelevant much of the parties' arguments on appeal, which are largely directed to the propriety of the circuit court's class decertification decision; the viability of the plaintiffs' claims; the viability of their theory of causation, that the defendants' actions caused the Act, which caused them to incur testing costs; and even the application of the Act to the facts of this case. None of those matters are presented by our certified question, and, indeed, some present case-specific or factual matters that cannot be considered in a certified-question appeal. Our certified question asks only, and we consider only, whether the Act "constitutes a legally sufficient proximate cause of the costs of *** lead toxicity screening." We consider this question *de novo*. *Grundy v. Lincoln Park Zoo*, 2011 IL App (1st) 102686, ¶ 3.

¶ 7 We must begin by interpreting the question. Normally, the term "proximate cause" refers to a "reasonable connection" between a negligent "act or omission of the defendant and the damage which the plaintiff has suffered." Prosser and Keeton on Torts § 41, at 263 (W. Page Keeton et al. eds., 5th ed. 1984). That conception has uneasy application here, because a legislative enactment can hardly be treated as an act of negligence, at least for purposes of tort law. We therefore interpret the question's use of the phrase "proximate cause" loosely, so that the question asks whether the Act can be considered reasonably connected to the costs of lead screening.

¶ 8 To that question, we answer in the affirmative. Although they dispute whether it has been enforced, the parties agree that the Act mandates lead screening and contains no cost-shifting provisions. See 410 ILCS 45/6.2 (West 2004) (requiring doctors to screen children for lead exposure). Thus, in general, the Act may cause a parent to assume the costs of lead screening. This is not to say, of course, that the Act is the sole cause for all lead screening, or that it is or is not the cause for the plaintiffs' lead screening costs. It is only to say that the Act can be such a cause, which is all the certified question asks.

¶ 9 In so answering, we do not imply that our answer has (or does not have) any relevance to the case at hand; it is quite possible that it will not affect the litigation. Indeed, the parties dispute the important issue of whether the Act can be the proximate cause of the costs for the plaintiffs in this case, when it is possible that several would have undergone testing notwithstanding the Act. We do not answer that question today, because we are asked only whether the Act may in general be a cause for the costs, not whether it is the cause in this case. Nor do we answer the questions of whether the plaintiffs' causation theory is viable, or whether the circuit court properly denied class certification. These are all matters not contained in our certified question, and thus beyond our jurisdiction.

¶ 10      For the foregoing reasons, we answer the certified question in the affirmative.

¶ 11      Certified question answered; cause remanded.