NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230378-U

Order filed June 13, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| SK INVESTMENT GROUP, LLC, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Will County, Illinois, |
| | ) | |
| v. | ) | Appellate Court No. 3-23-0378 |
| | ) | Circuit No. 21-AR-15 |
| | ) | |
| JOSEPH M. PERRY, | ) | Honorable |
| | ) | Susan T. O'Leary, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court.
Justices Albrecht and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  The trial court's findings that the evidence did not establish the existence of an oral contract and that plaintiff failed to prove the elements of an unjust enrichment claim were not against the manifest weight of the evidence.

¶ 2    Plaintiff, SK Investment Group, LLC (SK Investment), filed suit against defendant, Joseph M. Perry, for breach of contract and unjust enrichment when defendant allegedly failed to repay a loan that had been orally agreed to by the parties. Following a bench trial, the circuit court entered

judgment in favor of defendant. Plaintiff appeals, claiming the court erred in finding no evidence of an oral contract and lack of proof of unjust enrichment. We affirm.

¶ 3                                                    I. BACKGROUND

¶ 4        SK Investment is a real estate development company owned and managed by Brandon Sisk. It is undisputed that on May 18, 2015, SK Investment wired $40,000 to Perry. Perry did not sign a promissory note, and Sisk and Perry did not discuss any reimbursement arrangements before the money was deposited. It is also undisputed that Perry did not repay the funds.

¶ 5        On January 6, 2021, SK Investment filed suit against Perry for breach of contract (count I) and unjust enrichment (count II), alleging that Sisk loaned the money to Perry, with the understanding that Perry would pay back the loan within a year. In its complaint, SK Investment alleged that it demanded repayment of the money, and Perry refused. The date of the demand was not included in the allegations.

¶ 6        At trial, witness testimony revealed that Sisk's father, Larry Sisk, and defendant had known each other for 25 years and were involved in various real estate transactions and development projects together. On April 28, 2015, he received an email from Perry asking for a "bridge loan" to satisfy some equity requirements for Perry's limited partnership. Perry requested a loan for $35,000, at 15% interest, and offered to repay the loan in a year. On May 11, 2015, Larry received another email from Perry, containing a proposed promissory note for $35,000, plus accrued interest, payable in 12 monthly installments. Larry and Perry also exchanged several text messages between May 11 and May 18 in which Perry asked Larry to increase the loan from $35,000 to $40,000 and provided routing information for the wire transfer to his account at Chase Bank.[1]

---

[1] The trial court admitted the emails as exhibits over defense counsel's objection but sustained counsel's objection to the introduction of Larry's transcription of the text messages.

¶ 7     Larry further testified that his relationship with Sisk and his business was paternal in nature. He stated, "My son and I would talk about various investments and opportunities and things he's doing and things I'm doing like most families do."

¶ 8     Sisk testified that he completed an online transfer of $40,000 on behalf of SK Investment to a Chase Bank account in Perry's name on May 18, 2015. Eleven days later, on May 29, 2015, Perry wrote a check in the amount of $40,000 payable to SK Investment out of the same account. Sisk stated that Perry wrote the check as collateral for the loan and that Perry indicated he would let SK Investment know when the check could be cashed. Perry never informed SK Investment that it was okay to cash the check. A year later, Sisk made an inquiry to Chase Bank regarding the status of the check, but he acknowledged that SK Investment never tendered the check for deposit.

¶ 9     Sisk maintained that Larry, as an authorized agent of SK Investment, made an oral agreement to loan Perry $40,000 at 0% interest for one year. He testified that his father participated in the decision-making aspects of the company in 2015 and had the authority to act on behalf of SK Investment.

¶ 10    On cross-examination, Sisk admitted that, in earlier pretrial discovery, he stated that his father had "no relationship" with SK Investment. Counsel then asked why SK Investment chose to do nothing for almost five years to collect on Perry's loan, and Sisk answered, "This is the first lawsuit I've ever filed on my—in my entire life." Later, Sisk noted that an affiliate company managed by SK Investment obtained a Small Business Association (SBA) loan to purchase a local creamery after he loaned Perry $40,000. He also acknowledged that between 2015 and 2020, several lawsuits had been filed against SK Investment for defaulting on development loans.

¶ 11    Perry testified that he received the $40,000 payment from Larry in exchange for his assistance in obtaining SBA financing, allowing SK Investment to purchase several local

creameries. Perry's career involved introducing lenders and brokers to borrowers. He arranged a meeting between Sisk and lenders Gabe Beukinga and Marco Rojas. As a result, Homer Glen Creamery (also known as SK Creameries Homer Glen), a limited liability company managed by SK Investment, received an SBA loan.

¶ 12 Perry testified that he did not sign a promissory note for the $40,000 wire transfer he received from SK Investment, and he never discussed any repayment options for the funds with Sisk. He provided SK Investment with a check because Larry "want[ed] to book this as a loan for whatever reason." When asked again if he wrote a check to SK Investment after he received the loan, Perry responded:

"A: Yes, I was asked to come over to Larry's office. He had asked that we classify this as a loan for whatever scheme, whatever reason he wanted to do that with his current borrowing and lending relationship. I said I didn't care. In retrospect, that was an error.

And he said just give me a check for $40,000 and that will show that you paid it in full. I gave him a check at [*sic*] $40,000. I walked out. Again, four months and nine—four years, nine months later and here we are today."

¶ 13 At the trial's conclusion, the court found no evidence representing a loan and ruled in favor of Perry, concluding that SK Investment failed to show that "there was a contract which would require offer, acceptance, and consideration and some specificity as to the terms of the contract whether it was oral or written."

¶ 14 SK Investment filed a motion to reconsider, claiming the court failed to consider its alternative theory of recovery—unjust enrichment. In a five-page written order, the trial court denied the motion. The court initially emphasized that SK Investment did not discuss the elements of unjust enrichment or how evidence supported those elements at trial. It then concluded that the

4

unjust enrichment claim failed because plaintiff failed to establish that the $40,000 payment "violated the fundamental principles of justice, equity, and good conscious." In denying the motion, the court also reviewed the evidence weighing against the existence of an enforceable oral contract and found that Larry and Sisk's testimony lacked credibility. SK Investment appeals.

¶ 15                                    II. ANALYSIS

¶ 16                                A. Breach of Contract

¶ 17        SK Investment first contends the trial court erred in finding the nonexistence of an oral contract between the parties. Specifically, SK Investment argues the court's finding that the $40,000 deposit into Perry's account was payment for services rendered rather than a loan was against the manifest weight of the evidence.

¶ 18        Generally, the trial court interprets a contract as a matter of law. *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 129 (2005). However, where, as here, an oral contract is involved, the standard of review is different because the trial court is required to observe the conduct and determine the credibility of the witnesses in making findings of fact about the existence and terms of the oral agreement. *Mormat Electrical & Construction Services, LLC v. Hunter Construction Services, Inc.*, 2019 IL App (5th) 170316, ¶ 8. In such cases, the intent of the parties to the oral contract is determined by the trier of fact, and a reviewing court should not set aside the trial court's findings unless they are contrary to the manifest weight of the evidence. *Ceres Illinois, Inc. v. Illinois Scrap Processing, Inc.*, 114 Ill. 2d 133, 141 (1986). "A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence." *Judgment Services Corp. v. Sullivan*, 321 Ill. App. 3d 151, 154 (2001).

¶ 19    The elements of a breach-of-contract claim, whether oral or written, include the existence of a valid and enforceable contract, performance by the plaintiff, breach of contract by the defendant, and resulting damages. *Sheth v. SAB Tool Supply Co.*, 2013 IL App (1st) 110156, ¶ 68. A valid and enforceable contract requires offer, acceptance, and consideration. *Id.* If it appears that the proposed terms of an agreement are understood differently by the parties, there is no meeting of the minds and no contract exists. *Downs v. Rosenthal Collins Group, LLC*, 2011 IL App (1st) 090970, ¶ 49. When confronted with an unresolvable ambiguity in an alleged oral contract, the trial court may conclude that the contract does not exist. See *id.* ¶ 50.

¶ 20    Here, Sisk testified that he did not meet with Perry prior to the oral agreement. He claimed that his father, acting as an agent on behalf of SK Investment, agreed to the terms of the contract. He further testified that the contract included a one-year loan at 0% interest. Perry's testimony, however, rebutted Sisk's understanding. Perry testified that the $40,000 deposit into his Chase Bank account represented payment for his assistance in obtaining an SBA loan for SK Investment's real estate ventures. He testified that he wrote a $40,000 check at Larry's request to make the transaction "look" like a loan and that Larry had no intention of cashing the check. In addition, Larry testified that he and Perry discussed a loan for $35,000 or $40,000, with a possible interest rate of 15%. Certainly, an unresolved ambiguity existed regarding the terms of the oral agreement, leaving the trial court to reach the reasonable conclusion that a contract did not exist.

¶ 21    Moreover, the testimony revealed that neither Larry nor Perry believed Larry had authority to act on behalf of SK Investment. Although Sisk testified that his father acted as an agent for SK Investment, he answered his interrogatories differently, stating that Larry had no relationship with the company. Evidence also contradicted Sisk's testimony that the funds paid to Perry represented an interest free loan, without documentation or signed promissory note and without attempting to

cash the "repayment" check. Ultimately, the trial court found Sisk and Larry's testimony that the payment was a loan lacking in credibility, and we are not in a position to second guess that assessment. See *Mormat Electrical & Construction Services*, 2019 IL App (5th) 170316, ¶ 8. In this case, the court's findings that Larry was not authorized to enter into a contract on SK Investment's behalf and that the parties did not intend to create an oral contract for a $40,000 loan were not against the manifest weight of the evidence.

¶ 22    SK Investment's reliance on *Barnes v. Michalski*, 399 Ill. App. 3d 254 (2010), for the proposition that where there is "undisputed documentary evidence presented by the plaintiff," it creates a presumption of a loan is unpersuasive. In *Barnes*, the plaintiff claimed the transaction was a loan, while the defendant claimed it was a gift. Neither party argued, as they do here, that the transaction represented payment for services rendered, and the trial testimony revealed that the parties never agreed to the parameters of repayment. *Id.* at 255-261. At the close of the plaintiff's case, the trial court granted a directed verdict in the defendant's favor, concluding that the failure to prove the terms of repayment was fatal to the plaintiff's breach of contract claim. *Id.* at 261. On review, the court remanded for further proceedings, finding that the burden of production shifted to the defendant because it was "undisputed" that "plaintiff was not indebted to [the defendant]." *Id.* at 270. In remanding, the appellate court concluded that the plaintiff did not have to prove the terms of repayment as part of his *prima facia* case but merely had to show it was an unpaid loan, which the evidence established. *Id.* at 268. Here, the facts are different: Perry did not move for a directed verdict; a full trial was conducted; and evidence of a loan was not "undisputed." Therefore, *Barnes* does not apply.

¶ 23                                   B. Unjust Enrichment

¶ 24    SK Investment claims that if we conclude the trial court properly rejected the existence of an oral contract, the court's judgment in favor of Perry on count II—unjust enrichment—must be overturned. Stated differently, SK Investment maintains that it should be awarded $40,000, plus interest, because Perry's retention of the funds violates principles of justice and equity. We disagree.

¶ 25    To prevail on a claim for unjust enrichment, a plaintiff must allege facts supporting the conclusion that the defendant "retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.,* 131 Ill. 2d 145, 160 (1989). Nevertheless, the term "unjust enrichment" is not descriptive of conduct which, standing alone, will justify an action for recovery. *Lewis v. Lead Industries Ass'n, Inc.*, 342 Ill. App. 3d 95, 105 (2003). To prove unjust enrichment, there must be some independent basis which establishes a duty on the part of the defendant to act and the defendant must have failed to abide by that duty. *Id.* at 105-06; see also *Board of Education of City of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428, 463-65 (1989).

¶ 26    As an equitable remedy, unjust enrichment is only available when there is no adequate remedy at law. *Nesby v. Country Mutual Insurance Co.*, 346 Ill. App. 3d 564, 566 (2004). "[W]hile a plaintiff may plead breach of contract in one count and unjust enrichment and promissory estoppel in others, it may not include allegations of an express contract which governs the relationship of the parties, in the counts for unjust enrichment and promissory estoppel." *Guinn v. Hoskins Chevrolet*, 361 Ill. App. 3d 575, 604 (2005); see also *People ex rel. Hartigan v. E & E Hauling, Inc.*, 153 Ill. 2d 473, 496-97 (1992) (existence of a specific contract that controls the relationship of the parties bars an unjust enrichment claim for the same transaction).

8

¶ 27    In this case, the trial transcript is devoid of testimony supporting the elements of unjust enrichment, and the evidence does not show that Perry neglected a duty owed to SK Investment. In its motion to reconsider before the trial court, SK Investment asserted that Perry's retention of the $40,000 violated principles of justice, equity, and good conscience, but the testimony at trial did not indicate that Perry's retention of the funds was unjust or inequitable or that it violated notions of good conscience. Instead, Perry testified that the $40,000 deposit into his Chase Bank account represented payment for his assistance with an SBA loan, which Sisk confirmed SK investment eventually secured.

¶ 28    To its detriment, SK Investment relies solely on allegations of an oral contract between Sisk and Perry in asserting its unjust enrichment claim. In count II of its complaint, SK Investment referred to the "loaned" amount of $40,000 and the "$40,000 loan" that Perry agreed would be "repaid in full on or before May 18, 2016." Moreover, at trial, SK Investment failed to present any meaningful case regarding unjust enrichment, summarily claiming that it had "presented evidence sufficient to prove the case for both breach of oral contract and/or unjust enrichment." However, it is impossible to provide evidence sufficient to establish the existence of an enforceable contact that also supports a claim for unjust enrichment. See *E & E Hauling, Inc.*, 153 Ill. 2d at 497. Given the lack of proof of an independent theory of recovery, the trial court's ruling on count II was not against the manifest weight of the evidence.

¶ 29                                III. CONCLUSION

¶ 30    The judgment of the circuit court of Will County is affirmed.

¶ 31    Affirmed.